# PARKS v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, AND ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellants.

### Division One, November 25, 1903.

1. **Negligence:** DANGEROUS POSITION: CARE DUE PASSENGER. If the carrier assents to the taking of a. dangerous position on its car by a passenger, and knowingly assumes to carry him in that position, it is the carrier's duty to carry him safely in that position if it can be done by the exercise of that high degree of care which the law requires the carrier to observe for the safety of its passengers. And the degree of care to be observed by the carrier in such case must be in proportion to the danger which the passenger's position entails—the greater the danger, the greater the care the carrier is bound to exercise.

2. ———: ———: DUTY OF PASSENGER: CONTRIBUTORY NEGLIGENCE. It is correspondingly the duty of a passenger who has taken a dangerous position on a car, to exercise such care for his own protection as .an ordinarily prudent man in a like position would naturally be expected to exercise. But if after assuming a dangerous position on the car, with the knowledge and assent of the carrier, he thereafter is guilty of no act of negligence, but his injury is due to another act of negligence on the part of the carrier, arising out of a condition which became more hazardous than the dangerous position was at the time he assumed it, the passenger's claim for damages can not be defeated on the ground of contributory negligence.

3. ———: ———: REFUSAL TO CARRY PASSENGER. A common carrier has the right to refuse to carry a passenger in an unusual and dangerous position on the car.

4. **Contributory Negligence:** WANTONNESS: QUESTION FOR JURY. The motorman had warned the passenger that his position on the lower step of the front platform on the inside of a much-crowded car on a double-track street railway was dangerous, but the conductor received his fare there and did not warn him of the danger or object to his position. He was carried in this position for two miles to a curve, where cars could not pass except by approaching very closely to each other. The car on which he was there had the right of way, and the duty of the one coming from the other direction was to stop forty feet before entering the curve to allow

this car to pass in safety, but it did not observe that rule, and the motorman, observing its infraction of the rule, nevertheless went ahead, and plaintiff was caught and rolled between the cars and badly crushed, there being no chance for him to save himself either by jumping or otherwise. *Held*, that, although plaintiff may have been guilty of negligence in taking the dangerous position and that his being there contributed to his injury, yet it was a question for the jury to say whether or not the action of the motorman and conductor, who knew his dangerous position, in running the car into the curve after they had observed that those in charge of the other were not observing their duty to stop, were guilty of such recklessness and wantonness as bars the defendant from making the defense of contributory negligence.

5. **Negligence:** ASSUMPTION OF RISK. A passenger never assumes the risk of the carrier's negligence, and no such affirmative defense should be pleaded.

6. **Instruction:** ASSUMPTION OF FACT. Where there is no dispute that a certain fact exists, it is not error for the instruction to assume that fact to be established.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

AFFIRMED.

*McKeighan & Watts* and *Robert A. Holland, Jr.*, for appellants.

(1) The court erred in refusing to give, at the request of defendants, instructions in the nature of demurrers to the evidence: (a) Because the evidence showed that plaintiff himself was guilty of negligence that directly contributed to cause his injuries. (b) Because the evidence showed that plaintiff deliberately assumed a position which was dangerous, and the dangers of which were known to him. He, therefore, assumed the risk of riding where he did. (2) The court erred in giving instruction 3 at the request of plaintiff. Said instruction was erroneous because it assumed the existence of several matters which it was incumbent upon plaintiff to prove. It has been repeatedly held by this court that it is erroneous for a court in an in-

struction to assume the existence of things which it is incumbent upon the plaintiff to prove. (3) Plaintiff alleged in his petition that he was injured as a result of two cars passing each other in opposite directions in a curve. The evidence offered by defendants tended to show that the cars did not pass each other in a curve at all, and defendants were entitled to an instruction that if the jury believed the cars did not pass each other in a curve at the time the plaintiff claimed to have been injured, then and in that case the plaintiff could not recover, because he failed to sustain the allegations of his petition. A plaintiff must prove his case as he has alleged. Yarnell v. Railroad, 113 Mo. 376; Melvin v. Railroad, 89 Mo. 106; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 514; McCarty v. Hotel Company, 144 Mo. 397. (4) The court erred in refusing to set aside the verdict in this case at the request of defendants, on the ground that said verdict was so excessive as to indicate that it was the result of bias, prejudice and passion. Where a verdict is so large as to indicate bias, prejudice and passion on the part of the jury, it is the duty of the court to set it aside. Burdick v. Railroad, 123 Mo. 221; Nicholds v. Crystal Plate Glass Co., 126 Mo. 55; Sawyer v. Railroad, 74 Mo. 147; Haynes v. Town of Trenton, 108 Mo. 123; Gurley v. Railroad, 104 Mo. 211; Trigg v. Railroad, 74 Mo. 147.

*William R. Gentry* for respondent.

(1) The demurrer to the evidence was properly overruled. The motorman of the Suburban car, Finan, admitted that he knew that Parks and Houlihan were on the step. Yet he rushes heedlessly into the curve, in violation of all rules and the dictates of prudence, without ringing any bell, and tried to pass another car at a point where two empty cars could not pass, much less two loaded as these two were. There was, therefore,.

abundant evidence of negligence on the part of both companies while both cars were passing through the curve, as alleged.   Our courts in this State have passed upon similar cases and have always held that it was proper for such a case to go to the jury.   Huelsenkamp v. Railroad, 37. Mo. 537; Seymour v. Railroad, 114 Mo. 266; Wilmott v. Railroad, 106 Mo. 535; Paquin v. Railroad, 90 Mo. App. 118; Sweeney v. Railroad, 150 Mo. 385; Brainard v. Railroad, 61 N. Y. Supp. 74; Hassen v. Railroad, 53 N. Y. Supp. 1069; Pray v. Railroad (Neb.), 5 Am. Elec. Cas. 407; Railroad v. Higgs, 38 Kan. 375; Clark v. Railroad, 36 N. Y. 135.   In the following additional cases it was held that plaintiffs who were injured while riding upon footboards or steps of cars, were entitled to go to the jury:  Railroad v. Lee, 50 N. J. L. 435; Railroad v. Barton, 107 Fed. 215; Elliott v. Railroad, 18 R. I. 707; Kinkade v. Railroad, 9 Misc. 273; Salzmann v. Railroad, 26 N. Y. Supp. 311; McGrath v. Railroad, 87 Hun 310.   In the following well known cases it was held that it was not negligence *per se* for passengers to ride upon the platform of a car, and the reasoning applies equally as well to running-boards and steps; in fact, some of them mention those places also:  Watson v. Railroad, 91 Me. 584; Meesel v. Railroad, 8 Allen 234; Upham v. Railroad, 12 L. R. A. 129; Sweetland v. Railroad, 51 L. R. A. 783; Trumbull v. Erickson, 97 Fed. 891; Graham v. Railroad, 149 N. Y. 336; Adams v. Railroad, 9 App. District Columbia 26. See also the following cases which hold that where the plaintiff knows of a danger, or could by exercising ordinary care have known of it, it is still for the jury to pass upon the question of his contributory negligence in not looking, under the circumstances:  Kane v. Railroad, 128 U. S. 91; Powers v. St. Joseph, 91 Mo. App. 55; Kinkade v. Railroad, 9 Misc. 273.   (2) Instruction 2, given for plaintiff, ended with the proviso: ''And that prior to and at the time of said collision, the plaintiff was exercising ordinary care himself,'' which, as in the

preceding instruction, covered the defense of assumption of the risk, as above pointed out. It was copied as nearly as possible from an approved instruction in the case of Sweeney v. Railroad, cited under point I. (3) The collision was a fact about which there was no dispute, and our courts have repeatedly held that it is not error to assume such a fact. Barr v. Armstrong, 56 Mo. 577.; Carroll v. Railroad 88 Mo. 248; Bank v. Hatch, 98 Mo. 376; State v. Hollaway, 156 Mo. 222; Schmidt v. Railroad, 163 Mo. 645; Bertram v. Railroad, 154 Mo. 639. (4) The damages are not excessive, but are entirely reasonable. Black v. Railroad, 72 S. W. 559; Malloy v. Railroad, 73 S. W. 159; Hennessy v. Railroad, 73 S. W. 162. That it is proper to consider as an element of damages the loss of the power to procreate, is well established by the best authorities. Railroad v. Harris, 122 U. S. 608; Voorhies on Measure of Damages, Personal Injuries, sec. 64; Brake v. City of Kansas, 75 S. W. 191.

VALLIANT, J.—Defendants, two street railway companies, appeal from a judgment for $5,000 recovered against them in the circuit court of St.Louis county by the plaintiff on account of personal injuries alleged to have been received by him through their negligence.

There is not much dispute as to the governing facts of the case. In June, 1900, there was a strike among the employees of all the other street railroad companies in the city of St. Louis, and the only street cars running were those operated by the defendant companies. The consequence was, the cars of these two companies were crowded with passengers beyond their normal carrying capacity. People crowded in, filling the bodies of the cars, the platforms and every part where a seat or foothold could be obtained. Plaintiff on June 14, 1900, boarded a west-bound car of the St. Louis & Suburban Railway Company (which we will call the Suburban car) at the crossing of Fourteenth street and Franklin

avenue. The car was crowded with passengers to such an extent that the only space plaintiff could obtain on it was standing-room on the step of the front platform outside of the gate that inclosed the platform. There was another man and a boy standing on the step in the same attitude plaintiff took. During the period of this strike, it was not unusual for men to ride on the steps of the platform outside the gates as those men were doing. At the point where plaintiff boarded the car the defendant's railway runs north and south, but a short distance after passing Franklin avenue it turns west, which is its main course. It is a double-track road, and the cars of both defendant companies run over it. The step on which the plaintiff took his position was on the west side of the car going north, which would become the south side after it turned west, and was the inside, that is, the side next to the other track over which the east-bound cars came. The outside line of the step on which the plaintiff stood was on a line with the outside of the car, but the plaintiff's body projected beyond that line—he could not press himself closer in. The motorman saw the men and the boy on the step and told them it was dangerous to ride there, and that they ought to try to get on the other side, but they did not change their position. The conductor also saw the plaintiff there, and asked him for his fare while he was in that position, and received it. The plaintiff rode standing on the step outside the gate, from Fourteenth street to a point just beyond Vandeventer avenue, a distance of probably two miles or more, where the accident occurred. In going that distance the car passed around two or three curves and met several cars, east bound on the other track. Just west of Vandeventer avenue the tracks of the defendant companies curve to the north and then turn again to the west. Cars going in opposite directions meeting in this curve were brought more or less nearly in contact according to the

point in the curve at which they passed each other. The space between cars thus passing was variously estimated by different witnesses, but the testimony of all of them showed that at some point in the curve the meeting cars would come so close to each other that extra care was to be observed to avoid contact and it was made the subject of special regulation. The printed rules of the companies gave the east-bound cars the right of way in the forenoon and the west-bound in the afternoon. Plaintiff was on a west-bound car and it was about five or six o'clock in the afternoon, so that this car had the right of way. The rules also required the car that did not have the right of way to come to a stop forty feet before entering the curve, to allow a car coming in the opposite direction to pass through the curve without danger of contact. On this occasion as the Suburban car going west approached this curve, a car of the St. Louis and Meramec River Railroad Company (which we will call the Meramec car) approached it from the opposite direction. Each of these cars was in plain view of the motorman in charge of the other. There is some conflict in the evidence as to whether the east-bound car stopped at all before the accident, but if it stopped at all it did so very close to or just at the entrance of the curve. There is also some conflict as to the speed at which the Suburban car entered the curve and was going when the accident occurred. But whatever the truth about those disputed points may be, the fact is that the position of the Meramec car in reference to the curve was such and the movement of the Suburban car into and around the curve was such as that the plaintiff's body was brought into violent contact with the Meremec car and he was rolled between the two cars until the space between them became wider and he was dropped to the ground, having received serious injuries.

I. Appellants' first proposition is that the court erred in refusing the instruction in the nature of a demurrer to the evidence which defendants asked. The

substance of the proposition is that the position taken by the plaintiff, on the step of the platform, was so obviously dangerous, and that it so obviously contributed to the accident, that the court should have adjudged the plaintiff on his own evidence guilty of contributory negligence.

There are two standpoints from which this proposition is to be considered.

*a.* That the plaintiff's position was one of danger and that he would not have been injured if he had not been where he was, are facts indisputable. But was he guilty of negligence in being there? We need not dwell on the fact that the car was so crowded that he could not get on it in any other position, because he was not compelled to get on it at all. His taking passage on the car was a voluntary act. Traveling on a street car in a great city is always attended with danger, whatsoever position in or on the car the passenger may assume. But if it is a position that the carrier offers to the passenger, or a position which the carrier assents to his taking, and knowingly assumes to carry him in that position, then it becomes the duty of the carrier to carry him safely in that position if it can be done by the exercise of that high degree of care which the law requires the carrier to observe for the safety of its passengers. The degree of care to be observed by the carrier in such case must be in proportion to the danger which the passenger's position entails—the more dangerous the position, the greater the care the carrier is bound to observe. And at the same time the law imposes on the passenger in like case the duty of observing for his own safety the care that a man of ordinary prudence under like circumstances would observe, and that care, too, must be in proportion to the apparent danger—the more dangerous the position the more care a prudent man would be expected to observe. It is the duty of a carrier who has undertaken to carry a passenger in such a position to carry him safely if it can

be done by the exercise of the degree of care above mentioned, and it is correspondingly the duty of the passenger after he has taken that position to observe such care for his own protection as an ordinarily prudent man in a like position and under like conditions would naturally be expected to observe. Under these circumstances if the passenger is injured from a cause arising out of or incident to the position itself, without failure of duty on the carriers' part, the carrier is not liable. And though in such case the carrier fail to perform its duty and that failure results in the accident, still if the passenger fails also in his duty as above defined and his failure contributes to bring about the result, he can not recover. But in judging the conduct of both carrier and passenger we must look only to conduct after the passenger has assumed the position, not charging the position itself to either as an act of negligence, but requiring both to keep in mind the peril incident to the position and regulate their conduct in reference thereto.

In this case the carrier knew the position the passenger had taken and assented thereto, and undertook to carry him in that position. We say this because the motorman saw him there and warned him that it was a position of danger and the conductor saw him there, and without warning and without remonstrance asked him for his fare and received it. If that had been a position of such danger that the carrier was unwilling to assume the duty of carrying the plaintiff therein the carrier had the right to require the plaintiff to leave the car. It was an unusual position, one involving more than usual risk, and the carrier had the right to refuse to carry him in that position. But unless some other circumstance or condition arose to increase the hazard, it was feasible to carry a passenger safely in that position. This is shown by the fact that, during this period of overcrowded cars, the defendants did carry men safely in that position, and especially by the fact

that this plaintiff was carried safely from Fourteenth street to Vandeventer avenue, passing in route many cars on the other track, and passing through two or three other curves. There is no act of the plaintiff, after taking his position on the step, that is complained of as negligence. The foregoing views accord with former decisions of this court. [Huelsenkamp v. Railroad, 37 Mo. 537; Willmott v. Railroad, 106 Mo. 535; Seymour v. Railroad, 114 Mo. 266.]

*b.* But assuming that taking the position on the step of the platform was itself an act of negligence, and that it contributed to the occurring of the accident, still there was a question for the jury. The motorman and conductor both knew that the man was there and knew the peril of his position; they also knew that he could not jump from the car while it was passing through the curve without the risk of falling and being run over by the approaching east-bound car, or of being run over if he did not fall. Yet in plain view of the other car, and seeing that it had not stopped as the rules of the company required, and as common sense dictated, the motorman of the Suburban car ran his car into the curve and on until he had crushed the plaintiff's body against the Meramec car. The facts of this case make a strong example of the wisdom of the rule which allows a plaintiff, in exceptional cases, to recover notwithstanding his own contributory negligence, when the defendant sees the plaintiff's peril and although able by ordinary care to avoid it, yet recklessly or wantonly inflicts the injury. [Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262].

The court did not err in refusing an instruction looking to a nonsuit.

II. The plaintiff's petition stated his cause of action based on alleged negligence of the defendants in bringing their cars into collision or such close proximity as to cause the plaintiff's injuries. The

answer of the defendants consisted of a general denial, a plea of contributory negligence based on the act of the plaintiff in taking the dangerous position on the step of the platform, and then followed what in their brief the learned counsel for appellant call a plea of assumption of risk, which is as follows:

"And for a further defense defendants state that all the details of defendants' tracks and the manner of operating cars thereon were known to plaintiff, or by the exercise of ordinary care might have been known to plaintiff, and that the danger of riding upon the southern steps of the front platform of the west-bound car was known to plaintiff, or by the exercise of ordinary care might have been known to plaintiff, and that plaintiff assumed the risk of riding upon said part of said car on said occasion."

Appellants now complain that the instruction given at the request of the plaintiff ignored the defense set up in that plea.

That is not a good plea. The fact that the plaintiff had negligently taken a position on the platform step outside the gate was a fact already properly pleaded as an act of contributory negligence. To the plea of contributory negligence the plaintiff replied and the issue was properly joined. But the part of the answer above quoted, and which appellants call their plea of assumption of risk, presents no affirmative defense. If it is intended by that plea to say that the plaintiff's injuries were the result solely of his voluntary act of riding on the step of the platform, then it means that the injuries were not the result of the defendant's negligence, which defense was already covered by the plea of general denial. The petition having charged that the plaintiff's injuries were caused by the defendant's negligence, and the defendants having denied that charge, they were at liberty, under their general denial, to prove anything to show that the plaintiff's injuries did not result from their negligence.

That which can be proved under the general denial already pleaded, is improper to be specially pleaded.

If the pleader intended to say that to ride in that position was so dangerous that injury to the plaintiff could not have been avoided by the exercise of the care incumbent on the carrier, and that the fact that it was so dangerous was obvious or known to the plaintiff, then the fault of the plea is that it does not say that, and, in the light of the evidence, if it had said so the court would not have committed error in ignoring it in the instructions, because there was no evidence to support it. All the evidence shows that the accident would not have occurred if the motorman had used even ordinary care.

If by that plea it was intended to say that the plaintiff's negligent act of riding on the step joined with the defendant's negligent act of attempting to pass two cars in a space that was not wide enough for them to pass in safety, and that thus the plaintiff contributed to cause his own injury, that defense was already covered by the plea of contributory negligence.

But if it was intended by the plea to say that the plaintiff by voluntarily taking that position released the defendants from their duty to exercise the degree of care due from the carrier to the passenger, or if it was intended to say that by taking that position the plaintiff assumed not only the risk incident to it but assumed also the risk of the defendant's negligence, then it was not a good plea. The passenger never assumes the risk of the carrier's negligence.

There is always a risk of personal injury to a person traveling, even if there be no negligence either on his own part, or on the part of the carrier. That risk is incident to the act of traveling, and is greater or less according to the circumstances and conditions. That risk the passenger assumes. But if to the danger incident to the act of traveling under the circumstances and

conditions of the particular case, is added a danger caused by the negligence of the carrier, the passenger does not assume the risk of those combined dangers. If the catastrophe in question did not result alone from the danger incident to the act of traveling, under the given circumstances and conditions, but resulted because to that danger was added the consequence of the negligent act of the carrier, there was no such assumption of the risk as would relieve the carrier from liability.

Assumption of risk is one thing and contributory negligence is another. [Curtis v. McNair, 173 Mo. 270.] The court did not err in ignoring that plea in its instructions.

Instruction numbered 3 given for the plaintiff begins as follows: ''The jury are instructed that if you believe and find from the evidence in this case that the servants of defendant St. Louis & Meramec River Railroad Company, who were in charge of its said eastbound car on the occasion mentioned in the evidence, prior to and at the time of the alleged injury to plaintiff, were not exercising ordinary care to avoid said collision,'' etc.

Appellants complain of this instruction because they say that by the use of the words ''said collision,'' it assumes that there was a collision, instead of submitting the question to the jury. There was no dispute on that point. The evidence of defendants showed that there was a collision, as well as that of the plaintiff. Although the general denial put every fact stated in the petition in issue, yet a fact about which there was no real dispute, and that was conceded at the trial, may be assumed in an instruction. The defendants asked five instructions, marked B, C, D, E and F, the effect of which were that the plaintiff by taking the position of obvious danger on the step of the platform was not entitled to recover. From what we have above said it

will appear that there was no error in refusing those instructions.

Instruction G asked by defendant was to the effect that if the Meramec car at the moment of the accident was not passing through the curve, the verdict should be in favor of the Meramec company. That instruction called for a verdict for that defendant even though the Meramec car had stopped after it had entered the curve, as some of the evidence tended to show, at a point, where the danger was greatest. It was not error to refuse that instruction.

III. It is earnestly argued that the damages awarded by the jury are excessive.

We do not deem it necessary in this opinion to discuss the evidence bearing on this point. It is sufficient to say that the assessment by the jury is not so much out of the way as to justify us in invading their peculiar province. There is nothing to indicate that it is not the result of calm judgment and we will not disturb it.

We find no error in the record and therefore the judgment is affirmed. All concur.