ROSE TOROIAN, Appellant, v. PARKVIEW AMUSEMENT COMPANY, a Corporation, and D. D. MURPHY.—56 S. W. (2d) 134.

Division Two, December 14, 1932.

*William S. Connor* and *Charles A. Lich* for appellant.

702

*Carter, Jones & Turney* and *James E. Garstang* for respondents.

FITZSIMMONS, C.—Plaintiff appeals from a verdict and judgment in favor of defendants rendered in the Circuit Court of the City of St. Louis in an action for damages for personal injuries. The amount sued for gives this court jurisdiction of the appeal.

The injuries alleged are charged to have been suffered while she was riding an amusement device known as "Hey-Day," she having paid the regular fare for the ride. The hey-day is described in appellant's second amended petition as a device consisting of "a circular platform approximately thirty to forty feet in diameter upon which were a number of two-passenger cars operated by means of a cable or wire rope which was caused to move by machinery driven by motive power, and which cable was grasped by a device attached to the front of said cars, causing the cars to move with said cable or wire rope." Appellant in her petition alleges that while she was so riding, and was in the exercise of due care for her own safety, the cars, and particularly the one in which appellant was riding, came to a sudden, violent and unusual stop "by reason of the carelessness and negligence of the defendants."

Appellant alleges that, in consequence of the sudden, violent and unusual stop, she was thrown with great force against the front,

the back and the sides of the seat and against the floor of the car, and thereby she sustained the bodily injuries complained of. It will be observed that general negligence is pleaded. The answer was a general denial. The evidence tended to prove the allegations of the petition descriptive of the amusement device, and the facts of appellant's presence as a passenger in one of the cars, the sudden stop of the car and appellant's resultant injuries. Testimony offered by both sides tended to prove that the operating cable was beneath the platform on which the cars ran, and that the sudden stoppage of the cars of which appellant complains was caused by the cable jumping the guide or drum while the device was going at full speed. The man in charge of the hey-day, a witness called by respondents, testified that the cable frequently jumped off the drum, that the cable would stretch, and that there was no known invention that would keep the cable on the drums all the time. He also testified that the platform was level but that there were two dips in the track on which the cars ran. The cars, in addition to their forward motion, when pulled along the track by the cable, had a revolving motion, first to one side then to the other, as the momentum of the ride would throw them. The average forward speed of the cars was fifteen to twenty miles per hour. The forward movement of the cars, revolving and reversing as they went, together with the depressions in the tracks and the high speed caused the device to jerk as part of its regular operation. A ride would last three min-. utes. At the end of that period, an operator would declutch the cars from the cable by means of a lever. The cars would then fall off in speed and attendants would stop them by hand and help out the passengers. But when the cable jumped the guiding drum, as occurred on the day in question, the cars stopped at once.

Appellant testified that she frequently visited the park where the device was located before the day on which she was injured. She watched the hey-day on these prior visits, but she took her first ride on the day that she alleged she had been injured. Appellant was pregnant at the time of her injury and also when she watched the device at other times. On her earlier visits to the park she was afraid to go on the hey-day for fear she would get sick at the stomach because the cars went "around and around." But on the day that she.was injured, she was not afraid and so she ventured. Ten cars were operating that day and each carried two passengers. Appellant was the only one hurt.

I. Appellant charges that the trial court erred in giving respondents' Instruction 6, which submitted to the jury the issue of ordinary negligence, while respondents owed to appellant the highest

degree of care. We are not called upon to decide what degree of care respondents owed to appellant, for the reason that the parties tried the case below on the theory of ordinary care and the appeal must be decided in this court upon the same theory. [Mirrielees v. Wabash Railway Co., 163 Mo. 470, l. c. 486, 63 S. W. 718; Chinn v. Naylor, 182 Mo. 583, l. c. 594, 81 S. W. 1109; Plannett v. McFall (Mo. App.), 284 S. W. 850.] Appellant's amended petition, upon which the case was tried, alleged that the car came to a sudden, violent and unusual stop "by reason of the carelessness and negligence of the defendants." And appellant's main instruction is predicated. on the exercise by respondents or want of exercise of "due care, that is, such care as an ordinarily prudent person would have exercised under like circumstances."

■ ■ II. Appellant assigns error to Instruction 7, for the stated reason that assumption of risk has no place in a tort action. The first paragraph of the instruction is as follows: "The court instructs the jury that in riding upon the contrivance known as the 'Hey-Day,' plaintiff assumed the risk of all ordinary perils, risks and dangers pertaining to riding upon said 'Hey-Day,' which were known to plaintiff, or by the exercise of ordinary care on her part could have been known to her, but did not assume the risks, perils or dangers arising from or caused by the negligence or carelessness, if any, of the defendant, its agents or servants."

The instruction then informed the jury that, if they found and believed from the evidence that the injuries alleged to have been suffered by appellant were not the result of any negligence or carelessness on the part of respondents but were the result solely of the ordinary perils, risks and dangers arising from appellant riding on the hey-day and that such perils, risks and dangers were known to appellant or could have been known to her by ordinary care, their verdict should be for respondents.

Appellant goes too far when she states that assumption of risk has no place in a tort action. The passenger never assumes the risk of the carrier's negligence. [Parks v. St. Louis Suburban Ry. Co., 178 Mo. 108, 77 S. W. 70.] But he does assume the risks incident to the act of traveling, free from any additional danger caused by the negligence of the carrier. [Parks v. Ry. Co., supra.] And a carrier in defense of a tort action, may set up the passenger's assumption of risk. In like manner a servant assumes the risks incident to his employment, although he does not assume any risk arising out of the master's negligence. [Strother v. Kansas City Milling Co., 261 Mo. 1, 169 S. W. 43; Dietzman v. St. Louis Screw Co., 300 Mo. 196, 254 S. W. 59.] And plaintiffs in actions for tort

have been denied relief where the defense was the assumption of risk incident to the employment, unaffected by the negligence of the master. [Harbacek v. Fulton Iron Works Co., 287 Mo. 479, 229 S. W. 803.] The instant case is not so free from evidence of negligence as was the case of Pointer v. Mountain Railway Construction Co., 269 Mo. 104, 189 S. W. 805. But while in this case the sudden stop of the cars by reason of the fact that the cable jumped off the guiding drum was evidence of negligence, the testimony that there was no known remedy or correction for this and that it was of frequent occurrence was evidence tending to prove that the sudden stop was one of the risks incident to travel upon the hey-day. What this court said of a "racer-dip" in the Pointer case, supra, may be repeated here with reference to the hey-day (189 S. W. l. c. 812): "Still proceeding upon the theory that the relation of plaintiff to defendant is that of carrier and passenger, yet we must not blind ourselves to the kind of carriage plaintiff was contracting for, and the relative duties of the parties under the facts. Plaintiff knew he was contracting for carriage upon a pleasure device, which device with its tracks of dips and curves was before him, as a circular swing stands before one contracting to ride upon it. He knew he was making no contract for a Pullman car upon the level tracks of a steam railroad. When he contracted for this peculiar carriage, it was written in such contract, by the law, that he must subject himself to the inconveniences, jerks, and even dangers usually incident to that mode of conveyance."

The criticized instruction advised the jury, in consonance with the law of assumption of risk, that appellant did not assume the risks, perils or dangers arising from or caused by the negligence or carelessness of defendants. In view of the nature of the device, the constant jerking which made it a "thriller," and the question of fact whether the sudden stop was negligence or an incident risk, and the form of the instruction, we do not find that the instruction contained reversible error.

III. Appellant assails Instruction 8 given on behalf of respondents. It is as follows: "The court instructs you that in determining whether or not the defendants in this case, on the occasion when plaintiff is alleged to have been injured was guilty of negligence, as defined in these instructions, you are not at liberty to resort to speculation or conjecture, but must be governed by the evidence and the instructions of this court, and if, under such evidence and instructions of this court you are unable to determine to your reasonable satisfaction whether or not the defendants were guilty of negligence, then the plaintiff cannot recover against the defendants."

The burden of appellant's complaint is that Instruction 8 is in conflict with appellant's main instruction, which informed the jury of the law on the presumption of negligence in general negligence cases in these words: "If you find and believe all the foregoing to be facts, then the court instructs you as a matter of law that the mere fact of said device coming to a sudden, violent, and unusual stop, if you find it did come to a sudden, violent, and unusual stop, is presumptive evidence of negligence on the part of defendants, their agents, servants and employees; and the court further instructs you that if you find all the foregoing to be facts, then your verdict should be for the plaintiff, without you further find and believe from the evidence that defendants, by the exercise of due care, that is, such care as an ordinarily prudent person would have exercised under like circumstances, could not have avoided said accident, caused by said device coming to a sudden, violent and unusual stop, if you so find."

We do not see any conflict. Appellant attributes to the presumption indulged a conclusive quality which it does not in fact possess. In the case of Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S. W. 777, which was an action for damages by a passenger who was injured when a train was wrecked by the washout of a bridge, this court said of the presumption of negligence which we are examining, (288 S. W. l. c. 782): "The rule of law applicable in such cases as this—call it presumption of negligence, or *res ipsa loquitur*—does not purport to relieve the plaintiff of the burden of proving in the first instance that defendant was negligent; it merely relieves him of the necessity of alleging and proving specific negligence. From plaintiff's evidence in chief in the case at bar, tending to show that he was a passenger on defendant's train, that the train was wrecked, and that as a consequence thereof he was injured, a substantial inference of fact arose, namely, that defendant had in some respect failed to exercise that high degree of care which under the law it was incumbent upon it to exercise. The facts so put in proof were therefore evidence of negligence on the part of the defendant. When defendant introduced its evidence tending to show that it was not negligent in any respect, but that the wreck of its train was caused solely by an act of God, plaintiff's evidence did not vanish or disappear. It was still in the case, and it was sufficient to support an affirmative finding on the issue of negligence or no negligence. Plaintiff's evidence tending to show negligence, and defendant's tending to show the contrary, made as of course a case for the jury."

From the foregoing correct and lucid statement of the presumption it should appear that Instruction 8 is not in conflict with appel-

lant's main instruction, but is a consistent converse statement of respondents' lawful rights. In fact appellant's main instruction does not close the door against respondent but leaves it open for a verdict for respondent notwithstanding the presumption.

No reversible error appearing the judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.