This case was appealed to the Supreme Court of the State, and by that court transferred here on the motion of appellant without an opinion.
I. There is no point made on the pleadings. The case was tried on an agreed statement of facts, which is in words and figures as follows:
"It is hereby stipulated and agreed by and between the United States of America, by and through its duly appointed and authorized attorneys, and W. D. Jones, Receiver for the St. James Distillery, Inc., a Corporation, and the St. James Distillery, a Corporation, that this cause shall be presented to the Court, a jury being hereby waived, and that the matters here involved be presented to the Court by a Stipulation of Facts; and it is hereby stipulated and agreed that the facts concerning this case are as follows:
"That the St. James Distillery is a Corporation, and is located at St. James, Phelps County, Missouri.
"That the St. James Distillery was hopelessly insolvent on or before August, 1936, and was unable to pay its debts; that the said Distillery has been insolvent since that date, and is still insolvent; that a petition was filed on August 27, 1936, under Section 4960, Revised Statutes of Missouri, 1929, Mo.St.Ann. § 4960, p. 2271, asking that a Receiver be appointed to liquidate the assets of the insolvent Corporation.
"That, in accordance with that petition, the Judge of the Circuit Court of Phelps County did, on the 9th day of September, 1936, appoint W. D. Jones of Rolla, Phelps County, Missouri, as Receiver of the St. James Distillery; that the said W. D. Jones, after furnishing bond and fulfilling all requirements and qualifications, entered upon his duties as said Receiver, and has so acted since that day, and is still so acting.
"That the Receiver sold the property, which comprised the Distillery proper, and received from that sale the sum of One Thousand and No-100 Dollars ($1,000.00) which, it is submitted, represented the entire assets of the insolvent Corporation.
"That claims were duly filed against the insolvent Corporation, and are before this Court for its consideration.
"That among the claims were certain labor claims totaling about Nine Hundred and No-100 Dollars ($900.00), and representing the claims of about twelve individuals who had done common labor for the St. James Distillery. These individuals claim a preference by reason of Section 1168, Revised Statutes of Missouri, 1929, Mo.St.Ann. § 1168, p. 1429.
"That there was also duly filed by the United States of America on behalf of the Federal Housing Administration, a claim in which a priority was claimed by the United States under and by virtue of Section 3466, Revised Statutes of the United States (Title 31 U.S.C.A. § 191). This claim was based on a note duly executed by. the insolvent debtor Corporation, and made payable to the Industrial Bank and Trust Company of St Louis It was dated September 23, 1935, and was in the amount of Seven Thousand Four Hundred Eighty One and 78-100 Dollars ($7,481.78). The said note was on July 14, 1936, endorsed and delivered co the Federal Housing Administration, acting for and on behalf of the United States of America, and the United States of America, through the Federal Housing Administration, on that date reimbursed the Industrial Bank and Trust Company in the amount of Five Thousand Nine Hundred Eighty Eight and 88-100 Dollars ($5,988.88), the balance due on the said note, and the United States of America, through the Federal Housing Administration, is the present holder of the said note. The claim of the United States on this note was for Five Thousand Nine Hundred Eighty Eight and S8-100 Dollars ($5,988.88), with interest from and after the 14th day of July, 1936, and it is on this indebtedness that a priority is claimed on behalf of the United States, over and above all other creditors.
"The Circuit Court permitted the Receiver to make disbursements totaling about Three Hundred Twenty Two and. 00-100 Dollars ($322.00), being used entirely to pay the costs of the receivership. *Page 321 
The total assets before the Court for distribution are about Six Hundred Seventy Eight and No-100 Dollars ($678.00)."
The judgment of the court allowed the claim of the Government only as a general claim against the assets of the said estate, and subject to the claims of the laborers.
The assignments of error are, in substance, that the court erred in not granting priority to the United States for the debt due it over the claims of laborers in the distribution of the assets of the estate.
From the agreed statement, it appears that the insolvency occurred on or before August, 1936; that the receivership petition was filed on August 27th, 1936, praying for the appointment of a receiver to liquidate the assets of the corporation; and that the receiver was appointed on the 9th day of September, 1936, and duly qualified and took possession of the property of the insolvent corporation.
The United States acquired the note on which it asserts priority, on July 14th, 1936, before the appointment of the receiver, and the balance due thereon is largely in excess of the entire assets of the insolvent corporation. The claims due the laborers aggregate about $900 and are also in excess of the assets of the insolvent corporation, which amount to only about $678.
II. The respondent insists that a Federal question is involved and the case should be sent back to the Supreme Court
[1] Even if we agreed with this contention (which we do not), we would be concluded by the order of the Supreme Court transferring the case here.
[2] It is perfectly plain that there is nothing in the contention. The Missouri Constitution confers upon the Supreme Court jurisdiction "in cases where the validity of a * * * statute of * * * the United States is drawn in question". Mo.St.Ann. Const. Art. 6, § 12. Under this provision the validity of the statute must be drawn in question and it is not sufficient to confer jurisdiction on that court that the construction of a Federal statute is required. White Livestock Commission Co. v. C., M. St. Paul Ry., 157 Mo. 518, 57 S. W. 1070; Hohlstein v. Roofing Co.,328 Mo. 899, loc.cit. 908, 42 S.W.2d 573.
III. The Supreme Court of the United States in several recent cases has held that the note acquired by the United States by assignment to the Federal Housing Administrator as its instrumentality or agent, before the appointment of the receiver, is a debt due it which is preferred under Section 3466, Revised Statutes of the United States. Section 191, 31 U.S.C.A.; Graves v. New York, 306 U.S. 466, 477,59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466; Pittman v. Home Owners' Loan Corp. 308 U.S. 21, 32, 33, 60 S.Ct. 15, 84L.Ed. 11, 124A.L.R. 1263; United States v. Summerlin, 60 S.Ct. 1019, 84 L.Ed. 1283, decided May 27, 1940.
[3] The power of the Congress of the United States to give preference to the debts of the Government of the United States even over those of the several states, and of all other persons, is very clearly stated in numerous cases by the Supreme Court of the United States. It is equally true that the acts of Congress prevail over the state statutes. These rules have been announced in numerous cases. Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101; County of Spokane v. United States, 279 U.S. 80,95, 49 S.Ct. 321, 73 L. Ed. 621; People of the State of New York v. Maclay et al., 288 U.S. 290, 294, 53 S.Ct. 323, 77 L.Ed. 754; United States v. Knott, State Treasurer, 298 U.S. 544, 552, 56 S.Ct. 902,80 L.Ed. 1321, 104 A.L.R. 741.
[4] It is also well settled that a mere inchoate lien is not enough to defeat the priority granted the United States by the statute supra. United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 80 L.Ed. 1321; New York v. Maclay, 288 U.S. 290, 53 S. Ct. 323, 77 L.Ed. 754; Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621.
[5] Under these authorities it is perfectly plain beyond any possible doubt that the United States is given priority over any and all debts or other claims whose priority is based solely on a state statute that does not create a completed and perfected lien before insolvency intervenes.
In the instant case the priority of the laborers' claims must be and is based on the state statute as to all debts except those due the United States. The priority, if any, that such labor claims may have over the debt due the United States, must be determined by the state stature and by whether' it is in conflict with the statutes of the United States, as construed by the Supreme Court of the United States. In order for such claims to have priority over the debt 143 S.W.2d-21 *Page 322 
due the United States they must come within both statutes.
There are two cases decided by the Supreme Court of the United States in which, while the facts are entirely different, the line of reasoning employed in arriving at the conclusion would seem to be decisive of the instant case. The first case is Bramwell v. United States F. G. Co.,269 U.S. 483, 492, 46 S.Ct. 176, 70 L.Ed. 368, where, among other things, it is said:
"The specified ways in which insolvency may be manifested include all cases in which an insolvent debtor makes an assignment of his property; there is no exception, and no regard is had to the purpose or manner of the assignment; and they include all cases in which an act of bankruptcy is committed under the laws of a state or under a national bankruptcy law [11 U.S.C.A § 1 et seq.]. * * *" (269 U.S. loc.cit. 489,46 S.Ct. loc.cit. 177, 70 L. Ed. 368).
"* * * The priority given does not depend on any proceeding under the bankruptcy laws of state or nation. There is nothing in the language of the section, and no reason has been suggested, to indicate a purpose to give priority in the case of a debt due the United States from a debtor subject to the Bankruptcy Act and to deny priority, under like circumstances, when the debt is due from an insolvent bank or other debtor to whom the act does not apply. * * * The generality of the language is significant. * * *" (269 U.S. loc.cit. 490,46 S.Ct. loc.cit. 178, L.Ed. 368).
A late decision of the Supreme Court dealing with this question is: United States v. Marxen, 307 U.S. 200, 208, 59 S. Ct. 811, 83 L.Ed. 1222. In this case the note was acquired by the United States after bankruptcy, and, for this reason, priority was denied.
"* * * Section 3466 of the Revised Statutes [31 U.S.C.A. § 191], the basis for the claimed priority, provides that `Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend * * * to cases in which an act of bankruptcy is committed.' * * *" (307 U.S. loc.cit. 203, 59 S.Ct. loc.cit. 813,83 L. Ed. 1222).
"* * * `As this statute has reference to the public good, it ought to be liberally construed.' It has been said that `nothing else appearing' even claims under the rail-road Federal Control Act, 40 Stat. 451, would be entitled to priority. But this principle of construction is subject to the limitation that the generality of the language of the section is restricted by the purpose to grant priority to the United States only, and by legislative intention, as shown by other statutes. * * *" (307 U.S. loc.cit. 206, 59 S.Ct. loc.cit. 84, 83 L. Ed. 1222).
Under the Missouri statute, Section 1168, R.S.1929, Mo.St.ann. § 1168, p. 1429, priority is given to "debts owing to laborers or servants which have accrued by reason of their labor or employment, to an amount not exceeding one hundred dollars to each employe, for work or labor performed within six months next preceding the seizure or transfer of such property."
Under "Bankruptcy", 11 U.S.C.A. § 104, priority is given for: "* * * (5) wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commence of the proceeding, not to exceed $600 to each claimant ; * * * and (7) debts owing to any person who-by the laws of the States or the United States is entitled to priority: * * *."
[6] The Bramwell case, supra, is direct authority for the proposition that the statute giving priority to the United States is to be construed liberally and not literally, and that the taking of possession of the property by a state receiver is the equivalent of an assignment and is itself an act of bankruptcy so as to be brought within the statute.
By the same line of reasoning, the general language of the statute is to be construed liberally for the purpose of determining the rank or order of priority. Even though it is plain that the United States is given priority under the section supra, for debts due it, it does not follow that the priority so given is superior to the labor debts as defined in the Bankruptcy Act. By the same token that a liberal construction makes the appointment of a receiver equivalent to a — voluntary assignment, a liberal construction makes such proceeding equivalent to a proceeding in bankruptcy. If it were a proceeding in bankruptcy then, under the express provision of the Bankruptcy Act, wages due workmen, earned within three months and not to exceed $600 each, would be given *Page 323 
priority over the priority of the debt to the United States.
It is expressly decided in the Bramwell case, supra, that the priority does not depend on whether the proceeding is in bankruptcy or a state proceeding which is equivalent to bankruptcy. There is nothing to be found in the section indicating a purpose to grant priority to labor debts, over debts due the United States, where the proceeding is in bankruptcy, and deny it where it is not in bankruptcy, if both proceedings are in substance the same. For the same reason there is nothing to indicate a purpose to give the respective priorities a different rank in such proceedings.
The same line of reasoning was the basis for the decision of the Supreme Court in the Marxen case, supra, where it is expressly and clearly decided that the legislative intent is to be determined, not only by the general language of Section 3466, supra, 31 U.S.C.A. § 191, but as such intention is shown in other statutes of the United States relating to the same subject.
The state statute supra clearly purports to give priority to labor claims over all debts, including those of the United States. Whether it, in fact, does so depends upon whether it is in conflict with Section 3466, or the extent of the conflict.
[7] Read literally and construed strictly there is a conflict. Giving it a liberal construction, as do the cases supra, and construing the state statute not only with Section 3466, supra, but also with the Bankruptcy act, which, in terms of precision and of crystal clarity, gives preference to labor claims even over debts due the United States, the state statute does not conflict with Section 3466 supra, for the reason that said section 3466 permits the state to give priority to labor claims where such claims do not exceed $600 each and were earned within three months prior to the appointment of the receiver. While the state statute could not, without the consent of Congress, under the authorities supra, create a priority over debts due the United States, the acts of Congress can and do impliedly permit the state to grant priority for labor claims over debts due the United States, to the extent provided for by the Bankruptcy Act.
[8] Section 3466, supra, and the Bankruptcy Act are limitations on the state authority, but so long as the state statute conforms to the general policy of those statutes, the state is acting within the orbit of its authority in dealing with labor claims.
[9] The cases supra cannot be distinguished on the ground that they adopt a liberal construction of section 3466, supra, only for the purpose of establishing priority in favor of the debts due the United States, because in the cases supra a liberal construction was given to the statute for the purpose of denying priority to the United States where such preference conflicted with the broad policy of the Government relating to the matter under consideration. If the debts due the laborers in the instant case were created within three months before the receivership and are for less than $100 each, they fall within both the state statute and the Bankruptcy Act and have priority over the priority of the United States for debts due it, as provided in Section 3466, supra. This is so for the reason that, when the statute granting priority to the United States for debts due it is read in connection with both the Missouri statute and the Bankruptcy Act relating to debts of laborers, the intention of Congress to permit the state to give priority to such laborers, even over debts due the United States, would seem to us to be quite plain, especially in view of the fact that it is directly held in the Marxen case, supra, that we are not confined solely to the priority statute to determine the intent of Congress with reference to such labor claims, but that such intent is to be gathered from the Bankruptcy Act, supra, and from other acts of Congress relating to the same subject.
The national and state governments have long had a very definite policy with reference to this subject.
It is nowhere better stated than in a case rendered by the District Court in 1906. In re Erie Lumber Co., 150 F. 817, loc. cit. 823, where it is said: "The protection of the wages of labor is a primary duty of society and of government. The wage-earner constitutes an immense proportion of those who labor for the common welfare. So long as he remains helpful and self-sustaining, every prosperous result follows. In those unhappy epochs when the individual laborer is helpless, he and those dependent upon him become a charge upon the public. When labor en masse becomes helpless, when it is no longer possible to earn the means of subsistence, government itself is threatened, and revolution has often followed. It is therefore profoundly and philosophically true that it is *Page 324 
the duty of government in every contingency to secure his earnings to the wage-earner. This truth is at the basis of those laws which attempt to accomplish the result upon which the existence of orderly society may itself depend. National and state legislation sedulously attempt to accomplish this, and otherwise to ameliorate the condition of the laboring man. The courts with equal solicitude strive to attain the same end. * * *" (Italics ours).
The solicitude of the Federal Government for the protection of common laborers and the securing to them of the payment of their wages is not only clearly manifested by the Bankruptcy Act, supra, but by numerous other recent statutes-such, for instance, as the act commonly referred to as a floor for wages and a ceiling for hours, and the act creating the labor relations board. In recent years the United States Government has spent millions and perhaps billions for the sole and primary purpose of giving all laborers employment, and to further the economic theory of increasing the purchasing power of the ordinary laborer, in the hope of thereby permanently restoring prosperity. This is clearly shown by the PWA act, creating projects to which the government makes large contributions to keep those who would otherwise be out of employment gainfully employed.
The National Housing Act, 12 U.S.C.A. §§ 1701-1732, under which the debt to the Government in the instant case came into existence, has a like general purpose. It is an emergency measure to span the period until private lenders and investors "make ample credit available for the purpose of financing alterations, repairs," etc. 12 U.S.C.A. § 1703. It also has for one of its primary purposes the creation of jobs for those unemployed, as well as the furnishing of better homes to those of lower earnings. The broad public policy clearly indicated by these statutes and others that might be mentioned prevents the granting of priority to the government in the instant case, over the claims of those laborers. In Mellon v. Michigan Trust Co., 271 U.S. 236, 46 S.Ct. 511, loc. cit. 512, 70 L.Ed. 924, loc. cit. 926, the court, holding against Federal priority, said: "* * * To permit the claimed preference, we think, would conflict with the spirit and broad purpose of the statute. These become plain enough upon consideration of the just ends which Congress had in view together with the recent policy, revealed by the Bankruptcy Act [11 U.S.C.A. § 1 et seq.], in respect of priorities."
This rule is announced and reaffirmed in Armstrong Paint Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, loc cit. 333, 59 S.Ct. 191, loc. cit. 200, 83 L. Ed. 195, loc. cit. 205, where it is said: "* * * We have refused to nullify statutes, however hard or unexpected the particular effect, where unambiguous language called for a logical and sensible result. Any other course would be properly condemned as judicial legislation However, to construe statutes so as to avoid results glaringly absurd, has long been a judicial function. Where, as here, the language is susceptible of a construction which preserves the usefulness of the section, the judicial duty rests upon this Court to give expression to the intendment of the law."
In the instant case we think the result would be glaringly absurd to sustain the contention of the Government that its preferred claim has priority over the claims of these common laborers. The statute relied upon is written in very general terms. There is no plain and unambiguous language in it requiring such construction. The board policy of the Government in dealing with such claims is clearly and unambiguously expressed in the bankruptcy act, which not only gives preference to such labor claims, but gives priority over the debts due the United States. It is directly and clearly held in the Bramwell case, supra, that it is immaterial whether the proceeding be actually and technically in bankruptcy, or a state proceeding which is the equivalent of a bankruptcy proceeding, for the purpose of determining whether the Government is entitled to priority under Section 3466, Revised Statutes. On exactly the same principle and for the identical reason it is immaterial in the instant case that this is not strictly a bankruptcy proceeding for the purpose of determining whether these labor claims are given a preference and priority over the preferred claim of the Government.
The question that has given us the most serious trouble in the instant case is that the agreed statement is rather loosely drawn and does not clearly disclose the details with reference to these labor claims. All that is said concerning them is: "That among the claims were certain labor claims totaling about nine hundred and no/100 *Page 325 
dollars ($900) and representing the claims of about twelve individuals who had done common labor for the St. James Distillery. These individuals claim a preference by reason of Section 1168, Revised Statutes of Missouri, 1929."
This statement does not bring the claims strictly within the state statute. It does not show that they do not exceed $100 each and were for wages earned during the six months immediately preceding the receivership. Neither does it bring the claims within the Bankruptcy Act, which requires that the claims shall not exceed $ 600 each, and be for wages earned within three months before the date of the commencement of the proceeding.
[10] It is fairly inferable that none of the claims exceed $100 as they average only $75 each, which would indicate that they were earned less than three months before the appointment of the receiver, so as to come within both the state statute and the Bankruptcy Act. The contention of the Government in the trial court and again in this court has always been, and is, that it is entitled to priority over the claims of laborers, notwithstanding their respective amounts or the time in which the wages were earned. It is a well settled rule of procedure in this state that the parties are bound and concluded by the theory upon which the case was tried in the lower court, and the instant case was tried on that theory, not only in the lower court, but in this court. Young v. Greene County, 342 Mo. 1105, loc. cit. 1116, 119 S.W.2d 369; Toroian v. Park View Amusement co., 331 Mo. 700, loc. cit. 704, 705, 56 S.W.2d 134; Benz v. Powell, 338 Mo. 1032, loc. cit. 1036, 1037, 93 S.W.2d 877; Cook v. Sears, Roebuck Co., Mo.App., 71 S.W.2d 73.
[11] On the argument of the case counsel for the appellant was asked the question, by the writer, whether or not the facts were that the claims were for less than $100 each, and were for wages earned within three months prior to the receivership, and he stated that they were Hence, we have concluded that we are not compelled to reverse the case and remand it so as to require a finding by the trial court that the labor claims do not exceed $100 each and were earned within three months before the appointment of the receiver, so as to bring them within both the state statute and the Bankruptcy Act, which was in force when the receiver in the instant case was appointed.
[12,13] The judgment is erroneous in not allowing the Government's claim as a preferred one, but inferior to the preferred claims of the laborers. As the laborers' claims exceed the entire assets in the hands of the receiver, after paying the costs of the proceeding, the error is harmless. The appellant would not have a received anything on its claim if it had been properly allowed.
For these reasons we think the judgment should be, and is, affirmed.
SMITH and FULBRIGHT, JJ, concur.
On Rehearing.
TATLOW, Presiding Judge.
Counsel for the United States as intervenor, has filed a motion for rehearing, citing among other cases, Kupshire Coats, Inc. v. United States, 272 N.Y. 221, 5 N.E. 2d 715; Piedmont Corporation v. Gainesville N. W. R. Co., D.C., 30 F.2d 525. In the Kupshire case the Court of Appeals of New York has reached a contrary conclusion to ours in the instant case. In that case the court arrives at the same conclusion that we do, that the test is whether the State Statute, Section 1168, R.S.1929, Mo.St.Ann. § 1168, p. 1429, is "inconsistent" and "contrary" to Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, giving priority to the United States. It makes the case turn upon whether that section has been repealed or modified. That Section 3466 has not been repealed is, of course, self-evident. That it has not been directly and expressly either amended or modified is likewise true. But it seems to
us that the court, in that case, clearly over-looked the "generality of the language" of that section, which the Supreme Court of the United States, in the Bramwell case, cited and reviewed in our original opinion, considered both "significant" and controlling. The Kupshire case, as we think, is in conflict with the Bramwell case in holding that the Bankruptcy Act, 11 U.S. C.A. § 1 et seq., throws no light on the "generality of the language" of that section and seems to overlook the rule plainly announced in the Bramwell case:
"* * * no regard is had to the purpose or manner of the assignment; and they include all cases in which an act of bankruptcy is committed under the laws of a state or under a national bankruptcy law. * * [269 U.S. loc. cit. 488, 489, 46 S.Ct. loc. cit. 177, 70 L.Ed. 368]. *Page 326 
"The priority given does not depend on any proceeding under the bankruptcy laws of station or nation. There is nothing in the language of the section, and no reason has been suggested, to indicate a purpose to give priority in the case of a debt due the United States from a debtor subject to the Bankruptcy Act and to deny priority, under like circumstances, when the debt is due from an insolvent bank or other debtor to whom the act does not apply. * * *"
The Kupshire case does not mention the case of Mellon v. Michigan Trust Co., 271 U.S. 236, 46 S.Ct. 511, loc. cit. 512, 70 L. Ed. 924, loc. cit. 926, in which the court denied priority to the Federal Government and said: "To permit the claimed preference, we think, would conflict with the spirit and broad purpose of the statute. These become plain enough upon consideration of the just ends which Congress had in view together with the recent policy, revealed by the Bankruptcy Act, in respect of priorities."
If the Supreme Court means what it says, which we must assume it does, we must look at the generality of the language of the Statute (Section 3466, supra) for the purpose of determining its broad policy. We must also look at the recent policy revealed by the Bankruptcy Act in respect to priorities. In so looking it becomes plain enough to us that the just ends which Congress had in view in using the general language as it did in that section permits the State, in dealing with labor claims, to establish a preference so long as the State Statute conforms to the Federal Statute as to the conditions upon which the Bankruptcy ct allows a preference to such claims. While the Bankruptcy Act does not repeal Section 3466, supra, the meaning of that section is to be determined more by the broad policy indicated by the general language of the act, as that policy is not only reflected by that section itself, but by the recent policy revealed by the Bankruptcy Act in respect to such priority.
Section 3466 not only creates a priority in favor of the United States, but also constitutes a limitation upon State authority. While we regret that we cannot reach the same conclusion that the court did in the Kupshire case, the fact still remains that that case neither prevents nor excuses us from exercising our independent judgment in construing Section 3466. Our judgment can only be coerced in the construction of this section by an opinion of the Supreme Court of Missouri or the Supreme Court of the United States. The Supreme Court of Missouri has never had an occasion to deal with the matter directly or indirectly so far as we are advised. With due and proper deference to the opinion of the court in the Kupshire case, we think that the conclusion there reached is contrary to the reasoning of the Supreme Court of the United States with reference to this Statute. We realize that the Supreme Court of the United States, so far as we have been able to ascertain, has never decided the exact question involved in the instant case, and which was involved in the Kupshire case. If our conclusion is wrong the Supreme Court of the United States will no doubt correct it upon proper application.
Counsel for the intervenor, in citing Piedmont Corporation v. Gainesville N. W. R. Co., D.C., 30 F.2d 525, say: "Appellant's further researeh has disclosed that the exact question involved in this case has already been the subject of a decision of a Federal Court which decision is, of course, binding upon this Court."
We do not agree to either conclusion. That case was rendered by the District Court for the northern district of Georgia and is not binding on us. And neither does it justify us in refusing to decide the instant case according to our independent judgment. Neither do we think that that case decides the exact question involved in the instant case. In fact, we think it sheds a very dim light on the question involved here.
For these reasons the appellant's motion for rehearing should be and is denied.
SMITH and FULBRIGHT, JJ., concur.
 *Page 663