HOWARD *v.* RAILWAY COMPANY.

Where judgments were rendered against a railway company in Wisconsin, and the assignee of the older one, in order to enforce his lien, filed his bill against another company, who, under claim of right, had obtained possession of the road, — *Held*, 1. That the junior judgment creditor was not a necessary party, although, before the bill was filed, he had put on record in the proper office the sheriff's deed conveying the road to him pursuant to a sale under an execution sued out upon his judgment. 2. That he could not maintain ejectment against the purchasers, under the decree directing the sale of the road to satisfy the older judgment.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

This is an action of ejectment brought by Charles Howard against the Milwaukee and St. Paul Railway Company, to recover certain parcels of ground on which the defendant's railway and depots in the city of Milwaukee are situate. The La Crosse and Milwaukee Railroad Company constructed this end of its road in 1853–54, and erected its passenger and freight depots and its warehouses and road tracks in that city on the demanded premises. The latter have been in use since 1856 for railway purposes. Howard claims title under a deed executed June 13, 1862, by the sheriff to him as the purchaser for $7,500, at a sale which took place Jan. 15, 1859, under an execution sued out on a judgment for $25,586.78 against the latter company, and in favor of Sebre Howard, which was recovered and docketed in the Circuit Court of Milwaukee County, May 1, 1858. The deed was recorded Nov. 20, 1863, in the office of the register of deeds of that county.

The defendant also claims title under a judicial sale. A judgment was rendered Oct. 7, 1857, for $111,727.21 in favor of Newcomb Cleveland against the La Crosse and Milwaukee Railroad Company by the District Court of the United States for the Eastern District of Wisconsin. It was docketed on that day, and by several mesne assignments transferred to Frederick P. James.

That company executed its mortgage, dated June 21, 1858, and recorded July 8 of that year, to William Barnes, to secure

the bonds issued by it, amounting in the aggregate to $2,000,000. A supplemental mortgage was executed to him by way of further security. .Default having been made, the mortgaged property, including that now in controversy, was, with all the franchises, rights, and privileges of the company, advertised for sale, and sold to Barnes, May 21, 1859. He purchased the same for $1,503,333.33, in trust for the bondholders, and they organized a new corporation, under the name of the Milwaukee and Minnesota Railroad Company, to which was transferred all the property and the rights and franchises acquired by the sale.

There was, however, a mortgage prior in date to both the judgments above mentioned. It was executed Aug. 17, 1857, by the La Crosse and Milwaukee Railroad Company to Bronson and Soutter to secure the payment of $1,000,000, and covered the entire road and property of the company from Milwaukee to Portage City. The mortgagees filed, Dec. 9, 1859, their bill of foreclosure against that company, the Milwaukee and Minnesota Railroad Company, the plaintiff in this suit, said Sebre Howard, and others, defendants. The court passed a decree for the sale of the property, providing, however, that if the last-named company should pay into court a certain sum of money for the complainants, possession should be delivered to it of the eastern division of the La Crosse and Milwaukee. Railroad, being that portion of the road from Milwaukee to Portage, upon said company executing a bond to pay such sums of money as should come into the hands of the company to satisfy the Howard and Chamberlain judgments, if they should be established as liens upon the road. The company was let into possession of the road, and retained it until March 6, 1867. No sale was ever had under this decree.

James and other creditors of the La Crosse and Milwaukee Railroad Company filed their bill in the Circuit Court of the United States for the Eastern District of Wisconsin against that company, and the Milwaukee and Minnesota Railroad Company, praying that the sale to the latter company under the mortgage to Barnes be set aside as fraudulent and void, &c. This court, on appeal (6 Wall. 752), declared such sale to

be void, and pursuant to its mandate a decree was entered in the lower court enjoining that company from setting up any right or title to the property by virtue of its purchase under that mortgage. Said James filed his bill, April 18, 1866, in the court below against the Milwaukee and Minnesota Railroad Company to enforce the lien, and have execution of the said judgment, whereof he was the assignee, by a sale of the property, subject to certain liens and judgments thereon. A decree was passed declaring that the judgment was a lien upon the property, and fixing the amount due thereon; that the La Crosse and Milwaukee Railroad Company had ceased to exist as a corporation; and that the other company had succeeded to its property, subject to all valid and subsisting liens and incumbrances. The court further adjudged that all and singular the railroad formerly known as the La Crosse and Milwaukee Railroad, from Milwaukee to Portage City, its depots, station-houses, and buildings, together with all its rolling-stock, franchises, and appurtenances now in the possession of or claimed by the Milwaukee and Minnesota Railroad Company, be sold at public auction by the marshal of that district, unless prior to such sale said defendant pay to said complainant, or his solicitor, or to said marshal, the amount so as aforesaid adjudged due said complainant, with interest and costs up to the time of such payment; and that after such sale the company, and all persons claiming or to claim from or under it be for ever barred and foreclosed of and from all equity of redemption and claim of, in, and to said railroad, rolling-stock, franchises, and appurtenances, and every part and parcel thereof.

The sale was made subject to said prior liens and incumbrances on the day prescribed by the decree, and was reported to and confirmed by the court. The marshal thereupon executed a deed to the defendant, purchaser at said sale. It has been ever since in possession of the premises.

Said Charles Howard was not a party to the said proceedings and decree.

There was verdict for the defendant, and judgment having been rendered thereon, Howard sued out this writ of error.

The remaining facts are stated in the opinion of the court.

*Mr. H. M. Finch* for the plaintiff in error.
*Mr. John W. Cary, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Possession of the lands in controversy was held by the defendants at the time laid in the declaration, as the road-bed, depot site,—and other structures of their railroad, at the described locality, and the plaintiff brought ejectment to recover the premises, claiming title to the same by purchase at a sheriff's sale by virtue of a seizure to satisfy a judgment recovered in the name of Sebre Howard against the original company owning and operating the railroad and under which both parties claim title.

Sufficient appears to show that the company became indebted to the judgment creditor in the sum of $25,000, and gave him its promissory note for that amount. Payment being refused, he sued the same, and on May 1, 1858, recovered judgment for the amount. Execution in due form issued on the judgment, and the sheriff, by virtue thereof, seized and sold the property to the plaintiff, Jan. 15, 1859, as appears by the deed given in evidence.

Such a deed, it is claimed by the plaintiff, is by the law of the State made *prima facie* evidence that the title of the person against whom the judgment was rendered and by virtue of which the sale and deed purport to have been made in the lands and real estate described in the deed, passed to and vested in the grantee in such deed, and this without making other proof, either of the judgment or sale, than that furnished by the deed. Laws Wis. (1869), 39; *Ehle* v. *Brown*, 31 Wis. 405, 412.

Title to the lands in controversy is also claimed by the defendants through a purchase pursuant to a prior lien made by a creditor of the company, under whom they claim, at a sheriff's sale of a subsequent date, by virtue of an execution issued on a judgment docketed Oct. 7, 1857, and the lawful deed of the sheriff executed to the creditor in pursuance of such sale. Without entering into details, suffice it to say that the judgment was rendered against the company in that case for $111,727.71, together with the costs of suit, and the evi-

dence exhibited in the transcript shows that the title of the judgment in due form of law passed to the defendants by certain operative mesne assignments.

Suppose the law of the State to be such as is contended by the plaintiff, it is plain that it is as applicable to the purchase by the creditor under whom the defendants claim as to that under which plaintiff claims title.

Service was made, and the defendants appeared and filed an answer denying each and every allegation in the complaint or declaration. Preliminary matters being settled, the parties went to trial, and the verdict and judgment were in favor of the defendants. Exceptions were filed by the plaintiff, and he sued out the present writ of error and removed the cause into this court for re-examination.

Since the cause was entered here, the plaintiff has assigned errors pursuant to the rule making that requirement: 1. Five of the assignments call in question the rulings of the Circuit Court in admitting evidence offered by the defendants. 2. Then follows the sixth assignment of error, which calls in question the ruling of the court that the title of the lands in controversy is in the defendants, and that the verdict of the jury should be in their favor. 3. Thirty-three requests for instruction were presented by the plaintiff, and he calls in question the ruling of the court in refusing each one of those requests.

When the plaintiff made the purchase under which he claims title, there were subsisting liens upon the property prior in date to the judgment for the satisfaction of which the sale was made, to wit, a mortgage dated Aug. 17, 1857, executed by the original company to Bronson and Soutter to secure the payment of one million dollars, and a judgment in favor of Newcomb Cleveland, dated Oct. 7, 1857, for the amount before described, and which was docketed on the day it was rendered.

Bonds to the amount of two millions of dollars were issued by the company, and June 21st of the next year they executed a mortgage upon its railroad and property to William Barnes as trustee, to secure the payment of those securities, and on the 11th of the next month they executed a supplemental mort-

gage to the same party for the same purpose. Interest having fallen due, which was not paid, the mortgage was foreclosed by advertisement, and on the 21st of May of the next year all the property, franchises, and rights of the mortgagor were sold under the mortgage, and were bid off by the mortgagee in trust for the bondholders. By virtue of that sale the bondholders and the mortgagee became the owners of the property, franchises, and rights of the mortgagor, and they united two days later in organizing a corporation under the statutes of the State, which received the name of the Milwaukee and Minnesota Railroad Company, to which they transferred all the rights and interests they acquired by that purchase.

Enough appears to show that the Bronson and Soutter mortgage covered the line of the road from Milwaukee to Portage City, and it appears that the mortgagees, Dec. 9, 1859, filed a bill in the District Court for the district to foreclose that mortgage, in which they made both the old corporation and the new company, together with Sebre Howard and the plaintiff in the present action, parties defendants in the suit. Somewhat protracted litigation followed, but it will be sufficient to say that it culminated in a decree of sale, with an order that if the successor company should, before sale, pay into court certain sums of money they should be let into possession of the road, rolling-stock, and other property of the old company from Milwaukee to Portage City, subject to prior liens. Pursuant to that order the new company paid the specified sums into court, and on the same day took possession of the property, and managed and operated it from that time until the same was sold to the defendants.

Other judgment creditors of the old company, including Frederick P. James, on the 22d of April, 1863, filed a bill in the Circuit Court against the successor company, joining the old company and Selah Chamberlain as parties respondent in the suit. What the bill prayed was that the sale to the new company might be decreed fraudulent, and that the company should be enjoined from exercising any control over the property and franchises mentioned in the mortgage. Hearing was had, and the bill was dismissed in the Circuit Court; but, on appeal to the Supreme Court, the decree of the Circuit Court

was reversed, and the cause remanded for a decree in favor of the complainants.

It appears from the mandate that it was decreed that the foreclosure and sale of the mortgage be set aside and annulled as fraudulent, and that the new company was perpetually enjoined from setting up any right or title under it to the railroad and other property sold under the mortgage, and that the mortgage remain only as security for bonds issued under it in the hands of *bona fide* holders without notice. Besides that, an order of sale was contained in the decree, but no sale of the railroad or property was ever made under that decree.

James became the assignee of the judgment rendered Oct. 7, 1857, in favor of Cleveland, and on the 18th of April, 1866, he, the assignee, filed his bill in the Circuit Court against the successor company to enforce the lien of that judgment; and to have the property covered by the lien sold to pay the judgment debt. Among other things, he set out the judgment, the mortgage, and the organization of the new company, and alleged that the mortgage was fraudulent, and that the new company was holding the property in fraud of the creditors of the original company, and prayed that the property might be sold to satisfy the judgment, subject to certain prior liens and incumbrances.

Due process was served, and the respondent appeared and filed an answer. Litigation followed, which resulted in a decree that there was due to the complainant, as such assignee, $98,801.51, and that the same was a lien and incumbrance as of the date of Oct. 7, 1857, upon all the right, title, and interest which the original company had in and to the property situated between Milwaukee and Portage City. Provision was also made in the decree for the sale of all that portion of the railroad, the same being then in the possession of the successor company, and that that company and all persons claiming under it be barred from all equity of redemption. Explicit recitals were contained in the decree that the original company had ceased to exist as a corporation, and that the new company had succeeded to its property, subject to subsisting liens and incumbrances.

On the 2d of March, 1867, pursuant to that decree a sale

was made of the property by the marshal to the defendants for the sum specified in the transcript, and three days later the sale was confirmed by the Circuit Court, when the defendants received their deed of the premises, duly executed by the marshal. Demand of possession was made by the purchasers on the following day, which was duly surrendered by the occupants, and the defendants have continued to operate the road to the present time.

Separate exception was taken to the introduction of each of the documents offered by the defendants to prove the facts set forth in the preceding statement, and those exceptions constitute the basis of the first five assignments of error. Without entering into details, suffice it to say in that regard that the court is of the opinion that those assignments of error must be overruled, as it is clear that the entire evidence to which they relate was admissible either to show the title of the defendants, or to explain the changes made in the name of the corporation, or the regularity of the judgments, or the creation of the liens, or the transfers of the titles, or regularity of the proceedings by which the title was acquired or transmitted from one party to another.

Suppose that is so, still it is insisted by the plaintiff that the Circuit Court erred in directing the jury to return a verdict for the defendants, as specified in the sixth assignment of error.

None of the facts were in dispute, nor was there any conflict of testimony. Nothing of the kind is pretended, as all the material facts were exhibited in the documents given in evidence, consisting of judicial proceedings, mesne conveyances, judicial sales, and written assignments or conveyances, leaving nothing as an issue of fact to be determined by the jury.

Judges are forbidden to submit a question to the jury where there is no evidence to sustain the theory of the party making the request, nor are they any longer required to do so even when there is some evidence to support the theory, unless the evidence is of such a character that it would warrant the jury in finding a verdict in favor of the party presenting the request. *Improvement Company* v. *Munson*, 14 Wall. 442, 448; *Ryder* v. *Wombwell*, Law Rep. 4 Ex. 32.

Both parties set up a lien as the foundation of their title,

and it is undeniable that the judgment upon which the defendants rest their claim of title was rendered and docketed so as to become a lien upon the premises in controversy more than six months earlier than that which constitutes the basis of the title claimed by the plaintiff.  Nor can it benefit the plaintiff in this litigation that he first took the necessary steps to enforce his lien, unless he can show that by some means the prior lien of the defendants has been displaced or has become inoperative, which is not pretended.  Priority of lien certainly gave priority of legal right, just as in the case of a first and second mortgage.  Either may proceed in the case of mortgage, where the condition is broken, to foreclose; but if the second mortgagee proceeds first, his decree of foreclosure does not supersede or impair the rights of the first mortgagee, nor did the proceedings of the plaintiff to enforce the lien of his judgment have any effect whatever to supersede or displace the prior lien under which the defendants claim.

Concede that the judgment under which the defendants claim is prior in time and legal effect, still it is suggested by the plaintiff that it should have been enforced by seizure and sale instead of by a proceeding in equity.

Pending that litigation the decree declaring the lien was appealed to this court, and this court, Mr. Justice Nelson giving the opinion, decided that judgments, by the law of the State, are liens on real estate, and that the judgment, being the one now in question, became a lien on the road from the time of its rendition, and that a sale under a decree in chancery and a conveyance in pursuance thereof, confirmed by the court, passed the whole of the interest of the company, existing at the time of its rendition, to the purchaser.  *Railroad Company v. James*, 6 Wall. 750.

Weighed in view of that decision, it is clear that the suggestion of the plaintiff cannot be adopted.

Failing in that, his next suggestion is that he is not bound by the decree, inasmuch as he was not made a party to the suit which resulted in the decree, to which several answers may be given: 1. That he was not a necessary party, even if within the jurisdiction.  2. That he was not within the jurisdiction, and did not ask to be made a party.  3. That the decree in the

case, being a decree in equity, did not supersede or displace his lien. 4. That the decree left him still the right, as second lienholder, to redeem, which he may still do if his right is not lost by laches or lapse of time.

Much discussion of the mortgage to the trustee to secure the two millions of bonds is unnecessary, as it was subsequent in date to the judgment of the plaintiff. Nor is it necessary to add to what has already been remarked in respect to the foreclosure of the mortgage, as it left the judgment under which the sale to the plaintiff was enforced wholly unaffected as to priority and as to any rights accruing from priority. Evidence in that regard was not material to aid the alleged title of the defendants in any respect, except to show the origin of the new company and the transfer of the property from the old company to its successor.

Regular proceedings to foreclose the one million mortgage was also instituted; but there was no sale under that decree, the only result affected by it being to vest in the new company the possession of the railroad and its appurtenances. By paying the amount ascertained as allowed by the court, the new company acquired both the right of possession and the actual possession of the mortgaged property, and to that extent at least it stepped into the place of the old company as mortgagor, and became by the decision of the court the owner of the equity of redemption.

Beyond doubt such was the *prima facie* effect of the proceeding, but the possession and interest acquired by the new company were during all the time subordinate and subject to subsisting prior liens and incumbrances, among which was the judgment of the plaintiff as enforced by the prior sale. Prior liens and incumbrances were not affected by that proceeding, nor is it of much materiality in the present controversy, except to show the relation which the new company bears to the railroad and property in question.

Questions of various kind arise in the case, but the main question throughout is who holds the paramount legal title to the property which the plaintiff seeks to recover by his action of ejectment; and in determining that question it is evident that the controlling inquiry is who has the prior lien, as it is

clear that the sale of the property by one having only a subsequent lien will not supersede or displace a prior lien held by another; and it is equally clear that a sale in equity under a prior lien will not impair any rights which belong to the holder of the subsequent lien, if the latter duly asserts his rights in proper season. Such propositions cannot be successfully controverted; but the plaintiff contends that inasmuch as the new company was enjoined from asserting any right or title to the property on account of the fraudulent character of the proceeding, and inasmuch as the plaintiff was not a party to the proceeding to enforce the prior judgment against the old company, that the defendants did not acquire any superior legal rights by the sale under that decree.

Other suggestions of various kinds are made to show that the sale under that decree is ineffectual to give effect to the lien secured by the judgment; but the principal one is that the plaintiff was not made a party to the proceeding, and has not had his day in court, in opposition to the final decision which ordered the sale. Mere equities are not involved in the controversy, but the court is required to deal with the strict legal rights of the parties.

Frequent reference is made in argument to the fact that the proceeding for the foreclosure of the larger mortgage was subsequently adjudged fraudulent, and to the injunction which followed; but it is nevertheless true that the new company was duly organized, and that its actual existence as a corporation has been recognized in repeated instances by the courts in litigations of great importance. It was recognized as such in the proceeding to foreclose the smaller mortgage, and in the decree or order of the court in letting the new company as such into the possession of the railroad and its property, and throughout the period, exceeding fourteen months, that its directors and agents possessed, controlled, managed, and operated the railroad and all its fixtures and appurtenances. Public acts of the kind cannot be overlooked, and it was recognized in the proceeding to enforce the lien of the judgment under which the defendants claim title, both by the Circuit Court and the Supreme Court in three appeals here, as evidenced by the reported decisions of this court. *Railroad Companies* v. *Chamberlain,*

6 Wall. 748; *Railroad Company* v. *James*, id. 750; *James et al.* v. *Railroad Company,* id. 752.

Judicial recognitions of the kind are repugnant to the theory of the plaintiff, to which it may be added that it was the new company that was in possession of the property when the proceeding was commenced to enforce the lien of the judgment under which the defendants claim title, and they were still in actual possession of the same when the first decree was entered.

Complaint is made by the plaintiff that he was not made a party to the proceeding, but the omission to make him a party did not displace any lien he had upon the property, nor did it give him any new or enlarged interest in the same. Coming to the question of priority of legal title, the court must look at the judgments from which the respective titles flow. In settling legal rights, the court must give the party superiority whose lien was first acquired and perfected by an appropriate proceeding.

By omitting to make the plaintiff a party to the equity proceeding to enforce their lien, the defendants did not deprive the plaintiff of any legal right, nor was he cut off from any equitable rights which under the law had accrued to him in his position as a subsequent judgment creditor. Had the plaintiff been in possession of the premises when the decree was rendered and when the sale was made, he could not have been dispossessed by any process issued in the equity suit; the rule being that the writ of assistance cannot go against a stranger in a suit for foreclosure, and that the remedy of the party in such a case is ejectment.

Grant all that, and still it is suggested that the plaintiff lost his right to redeem which he could have exercised if the sale had been made at law; but it is not admitted that the suggestion as to loss of remedy is well founded, as it is clear that he might have had a remedy in equity after the sale as well as before. Equity in such a case is a convenient remedy, and it is obvious that the plaintiff could have filed his bill, and if there had been no other difficulty than priority of lien the court of equity would have granted him the right to redeem.

Subsequent incumbrancers, when not made parties to a bill for foreclosure or sale, are not bound by the decree; nor is that

rule violated in the least degree when it is held that the title of the defendants is paramount, as that consequence flows from the fact that the lien of the judgment under which the defendants claim is prior to that under which the plaintiff claims his title. Whatever rights the plaintiff had prior to the sale in equity which gives the defendants the paramount title, he still has, wholly unimpeached by that sale or by any other cause, unless they are barred by lapse of time or laches.

Process against the plaintiff under that decree could not affect his rights, as he was not a party to the proceeding, consequently the lien of his judgment still remained in full force. Even if the plaintiff had been made a party to that proceeding, the only effect would have been to cut off his equity of redemption, and as he was not made a party, his equity of redemption is not extinguished.

Authorities are scarcely needed to support these propositions, it being universally admitted that writs of assistance can only issue against parties affected by the decree, which is only saying that the execution cannot exceed the decree which it enforces, the rule being that the owner of property mortgaged which is directed to be sold can only be barred when he has had notice of the proceedings for its sale, if he acquired his interest prior to their institution.  *Terrell* v. *Allison*, 21 Wall. 289, 292.

Everybody admits the correctness of that rule; but it by no means follows that the decree of sale in equity is void because a second incumbrancer is not made a party to the proceeding, as it is clear that his lien remains in full force notwithstanding the decree of sale entered pursuant to such a proceeding.

Tested by these considerations, it follows that the sixth assignment of error must be overruled.

Most of the material matters involved in the seventh assignment of errors have already been sufficiently examined. Many of the assignments of error under this number aimed to show that the Circuit Court erred in refusing to adopt the theory of the plaintiff, that certain portions of the premises in controversy occupied by the defendants for railroad tracks or as sites for their depot and other structures are not necessary for the purposes suggested, or that the title to the same did not pass

to the defendants.   Careful efforts to examine these matters to the extent of the means exhibited in the transcript have been made, and it must suffice to say in that regard that the court is unable to perceive that it is shown that the Circuit Court erred materially in any of those matters to the prejudice of the plaintiff.

Remarks already made cover all the other grounds of complaint, and are sufficient to show that there is no error in the record.

*Judgment affirmed.*