No. 643.   Argued March 30, 31, 1936.—Decided May 25, 1936.

*Mr. Alger Hiss*, with whom *Solicitor General Reed, Assistant Attorney General Morris*, and *Messrs. Paul A. Sweeney* and *Hadley W. Libbey* were on the brief, for the United States.

*Mr. C. L. Waller*, with whom *Mr. Claude Pepper* was on the brief, for D. M. Lowry, Receiver, respondent.

*Mr. H. E. Carter*, Assistant Attorney General of Florida, with whom *Mr. Cary D. Landis*, Attorney General, was on the brief, for W. V. Knott, State Treasurer, respondent.

*Mr. Herbert U. Feibelman*, with whom *Mr. Saul Nemser* was on the brief, for Carl K. Withers, Commissioner of Banking and Insurance of New Jersey, respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The New Jersey Fidelity and Plate Glass Insurance Company is a surety company organized under the laws of that State. In 1932, it became insolvent; was upon its petition placed by a New Jersey court for liquidation in the hands of Kelly, the New Jersey Commissioner of Banking and Insurance; and he sought to take possession of its assets wherever situated. In 1930, the company had deposited securities of the face value of $75,000 with the State Treasurer of Florida in order to qualify there pursuant to §§ 6302 and 6303 of Florida Compiled General Laws. It entered into many surety obligations in Florida

prior to its insolvency; but no unsatisfied judgment against it was outstanding there when the New Jersey liquidation proceeding was begun.

Kelly brought suit in Florida against State Treasurer Knott to restrain disposition of the deposited securities except upon order of that court. After the institution of his suit, an amendment to § 6303 made by Chapter 16248 of the Florida Laws, 1933, provided that in case the assets of a surety company should be placed in liquidation in the state of its incorporation, a Florida court "shall have jurisdiction, upon bill filed by any party in interest, to take charge of the securities so deposited with the State Treasurer" and "distribute the proceeds of the sale of said securities proportionally among all of the Florida creditors who may make proof of their claims," "the surplus, if any, to be disposed of by proper order of such court." Thereupon, a Florida creditor brought suit under the amendment; that suit was consolidated with the one which Kelly had instituted; and a receiver was appointed who took possession of the securities and sold them.

In the receivership proceeding the United States filed, and under Revised Statutes 3466 claimed priority for, a debt of $14,075, that sum being the aggregate of twenty judgments which it recovered against the company in Florida on estreated appearance, or bail, bonds given there. The Florida officials insisted that the claim of the United States must be postponed to those of Florida creditors; the New Jersey commissioner, that priority can be accorded the United States, in any event, only in the domiciliary proceeding. The trial court denied it priority; and directed that debts due Florida, its political subdivisions, citizens or residents, be paid. The decree left undetermined whether the United States was entitled to receive in Florida payment from the residue after satisfaction of such Florida debts, or whether the residue

should be transmitted to the domiciliary liquidator. The United States appealed on the ground that it has been denied priority; the New Jersey commissioner on the ground that the domiciliary liquidator was entitled to the residue remaining after satisfying the claims of creditors reduced to judgment prior to the institution of the proceedings in New Jersey. The order of the trial court was affirmed by the Supreme Court, with some modification. *Kelly* v. *Knott,* 120 Fla. 580; 163 So. 64. We granted certiorari, because of the importance of the question involved.

*First.* Revised Statutes, § 3466, provides that "whenever any person indebted to the United States is insolvent" "the debts due to the United States shall be first satisfied." It is clear that, within the meaning of the section, the company had become insolvent, *Bramwell* v. *United States Fidelity & Guaranty Co.,* 269 U. S. 483, 488–490, and that, ordinarily, debts due on judgments recovered by the United States are "debts due to the United States." *Price* v. *United States,* 269 U. S. 492, 499–500. Compare *Beaston* v. *Farmers' Bank,* 12 Pet. 102, 134; *Pierce* v. *United States,* 255 U. S. 398, 401–402. See also *United States* v. *Mack,* 295 U. S. 480. The Florida officials contend that, since the priority accorded the United States depends entirely upon the statutory provision and is not an attribute of sovereignty, *United States* v. *State Bank,* 6 Pet. 29, Congress may deny to the Government the right of priority; and that, by prescribing elsewhere the conditions under which a surety company may write certain surety bonds in favor of the United States, U. S. C., Tit. 6, §§ 1–11, it has indicated its intention to exclude the liabilities here involved from the operation of § 3466. We do not construe the legislation concerning surety bonds as having such effect. The cases relied upon dealt with legislation of a different character. *Davis* v. *Pringle,* 268 U. S. 315; *Mellon* v. *Michi-*

*gan Trust Co.*, 271 U. S. 236; *United States* v. *Guaranty Trust Co.*, 280 U. S. 478. We are of opinion that the claim presented is, in its nature, one entitled to priority.

*Second.* The main question for decision is whether the Florida statute divested the company's title to the deposited securities or created a perfected lien thereon, so as to give the Florida creditors precedence over the United States.

Section 6302 of the Florida Laws, which required the deposit declares:

"And whenever such company ceases to do business in this State, and has settled up all claims against it, as hereinafter provided, and has been released from all the bonds upon which they have been taken as sureties said bonds [securities] shall be delivered up to the proper party on presentation of the Treasurer's receipt for said bonds."

Section 6303, as amended, provides:

"Whenever a final judgment has been rendered against any surety company on a fidelity, appearance, supersedeas or surety bond, the surety on said bond shall pay the same within thirty days. Upon notice of failure to pay the amount due under said bond within said time, the State Treasurer shall retain the bonds or securities deposited with him by said surety company . . . to cover said judgment and costs, subject to the order of the court trying any suit that may be brought upon said bond . . . ." [Then follows the amendment of 1933 authorizing institution of the suit.]

The trial court found that, by the deposit, the securities had been segregated and set apart out of the general assets of the company prior to the accrual of any liens of, or obligations to, the United States. We accept that finding as conclusive of the facts. The Supreme Court declared that the securities deposited by the company with the State Treasurer constituted "a trust fund

to be held by him for the protection and benefit of all Florida claimants entitled to seek satisfaction thereout, regardless of the continued solvency of the depositing corporation or its voluntary cessation of business in the State of Florida"; and that, in enacting the legislation requiring such deposit, Florida did so with the intention of protecting those whom it had the power and duty to protect. It held that the deposit with the State Treasurer constituted a trust fund for the benefit of Florida, its political subdivisions, citizens and residents; that they were entitled to be paid first out of it; and that the United States was not a beneficiary of such trust fund. Insofar as the decision of the Supreme Court is a construction of the statute of the State, we accept it as conclusive.

*Third.* The question for our decision is the legal effect upon the asserted federal right of the statute so construed. As was said in *Thelusson* v. *Smith,* 2 Wheat. 396, 426: "The United States are to be first satisfied; but then, it must be out of the debtor's estate. If, therefore, before the right of preference has accrued to the United States, the debtor has made a *bona fide* conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a *fi. fa.,* the property is divested out of the debtor, and cannot be made liable to the United States." See also *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. 102, 135–136. The deposit of the securities rendered them subject to process within the State; and it may be assumed that the contemplated beneficiaries would have acquired thereby precedence over those claiming under a later voluntary assignment by the company or any later levy. But it is settled that an inchoate lien is not enough to defeat the priority. *United States* v. *Oklahoma,* 261 U. S. 253; *Spokane County* v. *United States,* 279 U. S. 80; *New York* v. *Maclay,* 288 U. S. 290. Unless the law

of Florida effected, at least as early as the date of insolvency, either a transfer of title from the company, or a specific perfected lien in favor of the Florida creditors, the United States is entitled to priority.

The Supreme Court of Florida holds, in the case at bar, that the amendment, which was not enacted until after the institution of the liquidation proceeding in New Jersey, did not change substantive rights. And in *State* v. *Knott,* 114 Florida 95, 99; 153 So. 606, also decided after enactment of the amendment, the court describes thus the effect of a deposit:

"The correct interpretation of the statute is that the securities in the hands of the State Treasurer so held in trust by him for the account of the depositing company, are merely segregated assets of the surety company which, while capable of being specifically applied to the satisfaction of such final judgments against the surety company on fidelity and surety bonds as shall remain unpaid for thirty days, do not become impressed with the judgment lien until after the notice pursuant to which they may be expressly subjected thereto by the order of the court rendering a judgment on a bond executed by the depositing surety company."

Obviously, the deposit did not divest the company's title to the securities. No one was appointed trustee; and, at the time of the deposit, there was no ascertainable beneficiary. Who would share in the proceeds of the securities could not be known until they were exhausted in satisfaction of judgments, or until the entry of the decree of distribution in a suit authorized by the 1933 amendment. While in the case at bar the Supreme Court declared that the deposit created a "trust fund," the term appears to have been used to connote an inchoate general lien for the benefit of those persons who may become entitled to be paid from the proceeds, either as unsatisfied judgment creditors, or as Florida creditors at the time

when insolvency supervenes. Such an interest lacks the characteristics of a specific perfected lien which alone bars the priority of the United States.

*Fourth.* The Florida officials construe the opinion of its Supreme Court as holding that the United States is entitled to be paid in this proceeding from the surplus remaining after payment of the Florida creditors. They urge that from the report of the receiver it appears that such surplus will be adequate to satisfy the claim of the United States; they contend that, hence, the United States is not adversely affected by the judgment under review; and they ask that the judgment be affirmed, or the certiorari be dismissed, on this ground. But no order has been entered in either of the Florida courts directing payment of the surplus to the United States; and, moreover, it is not clear that the surplus, if so applied, would satisfy its claim. As the debt due the United States remains unpaid, the judgment denying it priority prejudices its right.

*Fifth.* Finally, the Florida officials contend that this Court lacks jurisdiction, because the order of the trial court (that of May 28, 1934) which gave the local creditors priority over the United States, constituted the final order in the case and disposed of the right which the United States is here asserting; that this order was not appealed from; and that the later order of the trial court (that of October 27, 1934) from which an appeal was taken to the Supreme Court of Florida, was not a final order. We have no occasion to enquire into these matters which are of local concern. The judgment here under review is that of the Supreme Court. It denied to the United States the priority claimed under § 3466. That denial is a final judgment under the rules governing our jurisdiction. *Ex parte Tiffany,* 252 U. S. 32, 36.

*Sixth.* The New Jersey commissioner contends that the proceeds of the securities remaining after satisfying the

claims of the local creditors must be transmitted to New Jersey; and that the Florida courts are without jurisdiction to award priority to the United States. It is true that the priority statute is not applicable unless insolvency has been manifested by some proceeding equivalent to an assignment of all of the debtor's property, *United States* v. *Oklahoma,* 261 U. S. 253, 262; *United States* v. *Hooe,* 3 Cranch 73, 91. The priority could not have been asserted in Florida or elsewhere, if there had been no such assignment. But this requirement of the statute was satisfied by the liquidation suit in New Jersey. *United States* v. *Butterworth-Judson Corp.,* 269 U. S. 504. The United States properly intervened in Florida in order to prevent the assets there from being applied in payment of local claims believed to be subordinate to its own. No rule of law precludes it from asserting its priority by an appropriate proceeding in any jurisdiction in which property of the insolvent is being administered. The Florida court did not lack power to entertain its application; and the fact that the claim originated in Florida and was reduced to judgment there, made it appropriate that the United States should seek there satisfaction from funds deposited to assure payment of judgments entered on surety bonds given there by the company. No good reason has been suggested why the United States should be denied the right to secure in this proceeding payment of its debt.

*Reversed.*