## UNITED STATES
### v.
### LIVERPOOL & LONDON & GLOBE INS. CO., Limited et al.
### No. 14404.

United States Court of Appeals
Fifth Circuit.
Dec. 21, 1953.

Rives, Circuit Judge, dissented.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Louise Foster, Washington, D. C., A. F. Prescott, John J. Kelley, Jr., Sp. Assts. to Atty. Gen., Frank B. Potter, U. S. Atty., Midland, Tex., William Cantrell, Jr., Asst. U. S. Atty., for appellant.

James R. Alexander, Will C. Thompson, Vernon Coe and R. B. Cousins, III, Dallas, Tex., Goldberg & Alexander, Dallas, Tex., Thompson & Coe, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a final judgment of the United States District Court for the Northern District of Texas holding that the appellee Sunnyland Wholesale Furniture Company had a garnishment lien upon funds of D. Ray Adams and his wife which was superior to a federal income tax lien claimed by the United States of America, appellant.

The undisputed facts are these. In the month of December, 1951, assessments were executed by the Commissioner of Internal Revenue covering withholding taxes and interests thereon which were assessed against D. Ray Adams, d/b/a Adams Furniture & Hardware Company, for the year 1951. The assessment lists were received on December 26, 1951, and February 26, 1952, respectively, by the Acting Collector of Internal Revenue for the First Collection District of Texas and on March 24, 1952, he filed a notice of tax lien in the office of the County Clerk of Bell County, Texas, in favor of the United States in the sum of $2,520.05.

On March 8, 1952, fire destroyed certain stock, furniture, and fixtures of the Adams Company in Bell County which was the community property of D. Ray Adams and Mary Martha Adams, his wife. The loss was covered by fire insurance policies in force with appellee Liverpool & London & Globe Insurance Company, Ltd., and another insurer not here involved. Adjusters for the insurance companies determined the extent of the loss to be $15,153.06, and an agreement was entered into between Adams and his wife and the insurance companies to settle for that amount, each company agreeing to share one-half of the liability or $7,576.53. On April 7, 1952, the Acting Collector issued warrants of distraint and served on insurer's local agent a notice of levy in the amount of $2,784.56, together with copies of the warrants of distraint and notice of tax lien.

On April 8, 1952, and prior to the payment of the insurance proceeds to any party the appellee furniture company filed suit on sworn accounts against Adams in the District Court of Dallas County, Texas, to obtain a judgment in the amount of $2,329.27. At the same time a garnishment suit was brought against the appellee insurance company to establish and enforce its garnishment lien in the sum of $2,329.27 with interest and costs against the funds held by its local agent. A writ of garnishment issued and on the following day it was served on the agent, attaching these funds.

On April 18, 1952, during the pendency of the state court proceedings, additional assessments were executed by the Commissioner of Internal Revenue covering income taxes and interests thereon which were assessed against Adams and his wife for the years 1948 to 1950, inclusive. The assessment list was received on April 21, 1952, by the Acting Collector and on April 26, 1952,

he filed a notice of tax lien in the office of the County Clerk of Bell County in favor of the United States in the sum of $10,417.57 plus interest. Thereafter, the Acting Collector served on the insurer's local agent a copy of the notice of tax lien together with warrants of distraint and notice of levy in the amount of $10,469.96.

This suit is an outgrowth of the state court garnishment proceeding which was instituted by appellee Sunnyland Wholesale Furniture Company. By an amendment to its answer therein the appellee insurance company named the United States as an additional party defendant on the grounds, among others: (1) that it had been served with the aforementioned notices of levy and warrants of distraint notifying garnishee that all property, rights to property, monies, credits and/or bank deposits in appellee's possession and belonging or owing to D. Ray Adams, Adams Furniture & Hardware Company, and Mary Martha Adams were seized and levied upon for the payment of the tax liens in the amounts of $2,784.56 and $10,469.96; (2) that demand was made upon the appellee insurer for these sums or for such lesser sum as it may owe to the tax debtors; and (3) that the garnishee did not know and was unable to learn what the attitude of the United States, the Acting Collector of Internal Revenue or the plaintiff in the garnishment proceeding would be relative to the matter of priorities as between them. The relief asked was that citation issue against the United States and the Acting Collector requiring them to answer and appear and set up their claims for lien or such other claims as they or either of them assert in connection with either of the levies above mentioned; that the garnishee be protected against liability in excess of its liability to the assured; and that it be granted a reasonable attorney's fee. This amendment was allowed and process was issued commanding the impleaded defendant, the United States of America, to appear in the state court. The suit was thereafter removed to the United States District Court for the Northern District of Texas on petition of the United States. Subsequently, and upon the ground that it had not consented to be made a party defendant the Government moved that the action against it be dismissed and that it be allowed to intervene as a party plaintiff for the purpose of seeking foreclosure of its lien. This motion was granted and the United States filed its petition in intervention naming Adams and his wife and the two appellees herein as defendants and claiming first and prior tax liens under Section 3670 et seq. of Title 26, U.S.C., on any and all property and rights to property belonging to the taxpayers. The appellee insurance company filed responsive pleadings in which it tendered its loss draft in the sum of $7,500.39 into the registry of the court and prayed for an order directing the clerk to receive and collect this draft and place the proceeds in the registry of the court and that Adams and his wife, the United States, and the appellee furniture company be required to interplead setting up the rights of each of them in and to the fund. It further prayed for a discharge from any other or further liability and for a reasonable attorney's fee in the sum of $500.00. Thereafter and on motion of the insurer the court entered an order directing the clerk to receive and collect the draft and place the proceeds thereof in the court's registry subject to the further order of the court. After the pleadings were closed a trial was had on the merits upon the pleadings, evidence and an agreed written stipulation of facts.

The District Court made fact findings and concluded as a matter of law that the appellee furniture company had a fixed lien by virtue of the execution of its writ of garnishment which was prior in point of time and superior to the Federal income tax lien claimed by the United States. The court was further of opinion that there was no contest between the appellee insurance company and any other parties to the cause and concluded that the insurer

was entitled to a reasonable attorney's fee. Judgment was accordingly entered in favor of the appellee furniture company and against the United States for the specified amount due on its lien and it was ordered that the insurance company be allowed a $500.00 attorney's fee and that the remaining balance of the tender into the registry of the court by the appellee insurer be paid to the United States. From this judgment the United States has appealed and the defendant garnishee below, Liverpool & London & Globe Insurance Company, Ltd., and the plaintiff, Sunnyland Wholesale Furniture Company, are appellees herein.

The tax liens asserted by the United States stem from 53 Stat. 448, 449, 26 U.S.C. (1946 ed.) §§ 3670, 3671, 3672. Section 3670 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides that unless some other date is specified by law the lien arises when the assessment lists are received by the collector, which effective dates are December 26, 1951, and February 26, 1952, as to the withholding tax liens and April 21, 1952, as to the income tax lien. Section 3672 provides that the lien shall not be valid against mortgagees, pledgees, purchasers or judgment creditors, until notice thereof has been filed in the office provided by the law of the state for such filing —in this case, the office of the County Clerk of Bell County. The appellee furniture company does not claim to be within the classes of persons specified

in § 3672, and, accordingly, that section is not material to our present inquiry. Furthermore, it was conceded during oral argument that the withholding tax liens are prior in time to the garnishment lien and it follows that the United States is entitled to a priority in payment of $2,578.55 out of the funds on deposit in the registry of the District Court. The important question here is whether at the time the Government's income tax lien arose appellee's garnishment lien possessed "the characteristics of a specific perfected lien which alone bars the priority of the United States." See United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 905, 80 L.Ed. 1321. The issue thus concerns the effect of a lien in relation to a provision of federal law for the collection of debts owing the United States, which has always been considered a federal question. Hence the Supreme Court has consistently held that while a state court's characterization of a lien as specific and perfected is entitled to weight, it is subject to reexamination by the federal courts. On the other hand, if the state court itself describes the lien as inchoate, this classification is "practically conclusive." Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348.

In this case the United States first argues that under the law of Texas the lien of the appellee furniture company was inchoate and that therefore we may reverse the judgment on this basis. More specifically it argues that in Texas a garnishing creditor's rights in the property are purely potential and contingent until judgment is entered establishing the garnishment lien. We do not at all agree.

Under the law of Texas, as expressed by statute [1] and the decisions of its highest court, a garnishment is

---

1. Art. 300, Vernon's Ann.Civ.St., provides: "Attachment creates a lien "The execution of the writ of attachment upon any property of the defendant subject thereto, unless the writ should be quashed or otherwise vacated, shall create a lien from the date of such levy on the real estate levied on and on such personal property as remains in the hands of the attaching officer, and on the proceeds of such personal property as may have been sold."

virtually a process of attachment and the service or levy of the writ of garnishment or attachment upon personal property creates a lien from the date of the levy, giving to the creditor a paramount right to such property itself as a security for the satisfaction of his demand. Focke v. Blum, 82 Tex. 436, 17 S.W. 770; Buerger v. Wells, 110 Tex. 566, 222 S.W. 151; Kanaman v. Hubbard, 110 Tex. 560, 222 S.W. 151; United States v. Yates, Tex.Civ.App., 204 S.W.2d 399, writ refused. See also, In re Jones, D.C., 42 F.2d 269; Vol. 27, Texas Jur., Sec. 37, page 500, where the rule is announced as follows: "The levy under a valid writ of attachment or execution places the property levied on within the custody of the law. It has, generally speaking, the effect of segregating that portion of the debtor's property which is necessary to satisfy a money judgment against him." The United States does not claim that the appellee failed to take any step to validate its writ of garnishment in conformity with the laws of Texas. In United States v. Yates, supra, it was held that an attachment lien filed according to law was specific, perfected and fixed upon the date of its levy and took priority, as of the date the writ was served, over a lien filed by the government for withholding and social security taxes filed subsequently thereto, but before the judgment of the court established and foreclosed the attachment lien. We think this decision correctly sets forth the law of Texas, regardless of what might be the law in other jurisdictions. The authorities cited by the government are clearly distinguishable on their facts and do not at all support its contention that in Texas, a garnishing creditor's rights in the property at the time of garnishment are "purely potential and contingent." On this phase of the question the appellee furniture company must prevail.

This brings us to the second phase of the main controversy, whether the liens were specific and perfected under federal law. In the most recent Supreme Court case, United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701 the lien held by the Government under 26 U.S.C. (1946 ed.) § 3670 and an unperfected municipal tax lien which arose prior thereto were held to be "general" liens. In this situation and confronted with a lien of the same class the United States successfully claimed the benefit of another statute to give it priority, § 3466 of the Revised Statutes, 31 U. S.C. (1946 ed.) § 191, which provides:

Art. 301, Vernon's Ann.Civ.St., provides in part:

"Judgment and foreclosure

"Should the plaintiff recover in the suit, such attachment lien shall be foreclosed as in case of other liens, and the court shall direct the proceeds of the personal property sold to be applied to the satisfaction of the judgment, and the sale of personal property remaining in the hands of the officer and of the real estate levied on, to satisfy the judgment * * *."

Art. 4076, Vernon's Ann.Civ.St., provides in part:

"Who may issue and when

"The clerks of the district and county courts and justices of the peace may issue writs of garnishment, returnable to their respective courts, in the following cases:

*   *   *   *   *

"2. Where the plaintiff sues for a debt and makes affidavit that such debt is just, due and unpaid, and that the defendant has not within his knowledge property in his possession within this State, subject to execution, sufficient to satisfy such debt; and that the garnishment applied for is not sued out to injure either the defendant or the garnishee. * * *"

"Art. 4084, Vernon's Ann.Civ.St., provides in part:

"Effect of service of writ

"From and after the service of such writ of garnishment, it shall not be lawful for the garnishee to pay to the defendant any debt or to deliver to him any effects; nor shall the garnishee, if an incorporated or joint stock company in which the defendant is alleged to be the owner of shares or to have an interest, permit or recognize any sale or transfer of such shares or interest; and any such payment or delivery, sale or transfer, shall be void and of no effect as to so much of said debt, effect, shares, or interest as may be necessary to satisfy the plaintiff's demand. * * *"

"Whenever any person indebted to the United States is insolvent * * *, the debts due to the United States shall be first satisfied; * * *." But here the United States made no contention, so far as the record shows, that the tax debtors were insolvent and is content to refer to § 3466 as a "kindred matter." See United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S. Ct. 111, 113, 95 L.Ed. 53.

We do not at all agree with the Government that the Security Bank case is an authority here. The question there presented was whether a federal tax lien was prior in right to an attachment lien on property in California obtained under the California Code of Civil Procedure, where the attaching creditor had "merely a *lis pendens* notice that a right to perfect a lien exists" at the time when the tax liens of the United States were recorded. In that case the state court itself described the lien as inchoate and the Supreme Court accepted this classification as practically conclusive. In that sort of a situation the attachment lien is contingent, and the federal tax lien is not defeated by a contingent, inchoate lien prior in time. In the instant case a different situation is presented in that the Government here claims that its general tax lien is entitled to priority over the garnishment lien which was specific and perfected under Texas law before the second federal lien arose. If then the Security Bank case is not an authority here we think there is ample support for the District Court's holding that "this case is ruled by the securing of the first lien [107 F.Supp. 405, 406]". The following are but some of the many cases which recognize the universal principle of first in time, prior in right. Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592; Howard v. Railway, 101 U.S. 837, 25 L. Ed. 1081; United States v. City of Greenville, 4 Cir., 118 F.2d 963.

In Illinois ex rel. Gordon v. Campbell, supra* the Supreme Court reviewed a number of its prior decisions under § 3466 and held that under the long-established rule there were three essentials which were crucial to determine whether the lien was specific and perfected, and these are "(1) the identity of the lienor, * * * (2) the amount of the lien, * * * and (3) the property to which it attaches * * *." It was held that the lien was not specific as to the property at the crucial time because it had not been definitely ascertained what property of the debtor was devoted to and used in his business and such property had not severed itself from the general and free assets of the owner, from which the claims of the United States were entitled to priority. We think the present case comes within the established rule. Here, the identity of the lienor was made certain, before the Government's priority attached, by the filing of the garnishment proceeding on sworn accounts which fixed the amount of the lien. Here, there was never any question but that the property involved was definite and certain and it is clear that the levy under the writ of garnishment segregated a definite portion of the property from the debtor's general estate. We therefore feel justified in acting on the assumption that the Supreme Court would hold that the priority set up in § 3466 supra, would not divest a specific and perfected garnishment lien, attached to specific property which indeed was in custodia legis when the federal lien arose. In a closely analogous case and in not dissimilar language we recently had occasion to discuss these selfsame principles and we adhere to the views therein expressed. United States v. Albert Holman Lumber Co., 5 Cir., 206 F.2d 685, rehearing denied 208 F.2d 113.

The only remaining issue is whether the District Court erred in allowing an attorney's fee to the appellee insurance company. As to this little need be said, except that the allowance was au-

* 329 U.S. 362, 67 S.Ct. 347.

thorized by the express terms of the applicable statute, Rule 677, Vernon's Texas Rules of Civil Procedure (formerly Art. 4100, Vernon's Ann.Civ.St.), and the authorities thereunder. Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137; Sorenson v. City National Bank, 121 Tex. 478, 479, 49 S.W.2d 718; cf. 25 Tex.Jur., Sec. 11, page 62.

The judgment was right. It is Affirmed.

RIVES, Circuit Judge (dissenting).

On April 21, 1952, the assessment list as to the income tax lien here in controversy was received by the collector, and, thereupon, under the terms of the statute, 26 U.S.C.A. §§ 3670, 3671, a lien arose "in favor of the United States upon all property and rights to property * * * belonging to" the taxpayer. On April 26, 1952, notice of the lien was duly filed by the collector, and, thereupon, the lien became valid "as against any mortgagee, pledgee, purchaser, or judgment creditor", 26 U.S. C.A. § 3672(a). On the latter date, the appellee furniture company had not secured a judgment against the taxpayer. Its writ of garnishment attaching the funds in aid of its pending suit had, however, been served on the insurer's agent on April 9, 1952 before the income tax lien arose. The question then is whether in the interim period between the service of the writ of garnishment and the securing of judgment, the funds "belonged to" the taxpayer.

The garnishing creditor bore the burden of securing a judgment without which the lien of its garnishment would amount to nothing. No presumption can be indulged that a judgment would be secured. If anything, the presumption is to the contrary. It has been expressly ruled that the doctrine of relation back of the judgment has no application against the Government. United States v. Security Trust & Savings Bank, 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53. The funds "belonged to" the taxpayer until they had been taken from him by due process of law, and that means

until he had had his day in court and a judgment rendered against him. Before that occurred, the income tax lien had arisen and had become valid even as against a judgment creditor.

It is important to note the specific statute with which we are concerned, namely the statute giving the United States a lien for its taxes, 26 U.S.C.A. § 3670, and not the statute giving the United States priority as to all debts against insolvent debtors, 31 U.S.C.A. § 191. The latter statute was the one involved in United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 80 L.Ed. 1321, and Illinois v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, and the one considered in determining priorities of liens in United States v. Gilbert Associates, 345 U.S. 361, 365, 366, 73 S.Ct. 701. Even as to the general priority statute, the Supreme Court has been careful to point out that it has never actually decided whether the priority is overcome by a fully perfected and specific lien. Illinois v. Campbell, supra, 329 U.S. at page 370, 67 S.Ct. 340, 91 L.Ed. 348; United States v. Gilbert Associates, supra, 345 U.S. at page 365, 73 S.Ct. 701, 704.

True, in the case last cited, the Court said that the United States was "a general lienholder on all the taxpayer's property", referring to 26 U.S.C.A. § 3670. I agree, however, with what Judge Parker said in United States v. City of Greenville, 4th Cir., 118 F.2d 963, 965:

"To say that the lien provided by this statute is a general lien on all the property of the taxpayer does not help in the solution of the problem presented; for a lien is not deprived of validity because it attaches to a number of pieces of property instead of to a single piece, nor is it for that reason to be subordinated to a junior lien attaching to a single piece of property. * * *

"After the lien provided by the statute attaches, the property has in a sense two owners, the taxpayer

and, to the extent of the lien, the United States. * * * "

Like observations to those last expressed by Judge Parker do not hold true as to the furniture company's garnishment lien. The mere service of the writ of garnishment did not divest the taxpayer's title. Thereafter and before judgment rendered the property did not have in any sense two owners, the taxpayer, and, to the extent of the lien of the garnishment, the furniture company. The taxpayer continued the sole owner until the lien of the United States fastened, and even thereafter, insofar as concerns the furniture company, until it secured a judgment against him.

Again reverting to the general priority statute, 31 U.S.C.A. § 191, the Supreme Court has recently said:

"In claims of this type 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. Thelusson v. Smith, 2 Wheat. 396, 4 L. Ed. 271. Until such possession, it remains a general lien." United States v. Gilbert Associates, supra, 345 U.S. at page 366, 73 S.Ct. at page 704.

The service of the writ of garnishment effected no actual change in the possession of the property. The only way in which it can be claimed to have effected even a theoretical change of possession is that it may be said to have placed the property within the custody of the law, or to have the effect of segregating that portion of the taxpayer's property which might be necessary to satisfy a future judgment against him. That is not enough. Who would share in the property would not be known until the judgment was rendered. What was said in United States v. Knott, 298 U.S. 544, 550, 56 S.Ct. 902, 905, 80 L.Ed. 1321, is applicable here:

"Obviously, the deposit did not divest the company's title to the securities. No one was appointed trustee; and, at the time of the deposit, there was no ascertainable beneficiary. Who would share in the proceeds of the securities could not be known until they were exhausted in satisfaction of judgments, or until the entry of the decree of distribution in a suit authorized by the 1933 amendment. While in the case at bar the Supreme Court declared that the deposit created a 'trust fund,' the term appears to have been used to connote an inchoate general lien for the benefit of those persons who may become entitled to be paid from the proceeds, either as unsatisfied judgment creditors, or as Florida creditors at the time when insolvency supervenes. Such an interest lacks the characteristics of a specific perfected lien which alone bars the priority of the United States."

Also pertinent is Illinois v. Campbell, 329 U.S. 362, 376, 67 S.Ct. 340, 348, 91 L.Ed. 348, where the Court said:

"The state has acquired neither title nor possession, Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271; New York v. Maclay, 288 U.S. at page 290, 53 S.Ct. 323, 77 L.Ed. 754, since the receiver's possession was that of the court, not of the state; and did not sever the property from the debtor's general assets as of the crucial date."

If reality rather than terminology is to be the guide, the lien of this garnishment was no more specific and perfected than was the lien of the attachment in United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53. The decision of this case seems to me contrary to the decision in that case.

As to the five hundred dollars attorney's fee allowed by the district court to the insurance company for interpleading the parties, it seems even clearer to me that that portion of the fund belonged to the taxpayer at the

time the lien of the United States arose, and that the attorney's fee could not be allowed out of the funds available for the payment of the tax lien of the United States.

I, therefore, respectfully dissent.