## NORDIN v. MAY.

### No. 14836.

United States Court of Appeals,
Eighth Circuit.

Nov. 20, 1953.

James T. Gooch, Little Rock, Ark., T. S. Lovett, Star City, Ark., and G. D. Walker, Jonesboro, Ark., submitted the brief for appellant.

Harry E. Meek, Little Rock, Ark., submitted the brief for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

COLLET, Circuit Judge.

In this action the plaintiff, Andrew Nordin, seeks to recover damages from the defendant, W. D. May, for loss occasioned Nordin from May's refusal to furnish Nordin with steam to operate Nordin's dry kilns. Nordin was also operating an oak flooring plant. The dry kilns were used in the operation of the oak flooring plant. May was operating a sawmill and steam generating plant under a lease on property adjacent to Nordin's plant. Nordin claims that because of a covenant in a mortgage made by the former owner of the oak flooring plant and dry kilns to Nordin, under the foreclosure of which Nordin acquired ownership, that May's predecessor in title of the sawmill and steam generating plant bound that property and May as its lessee to furnish Nordin steam for the operation of the dry kilns. May's refusal to furnish steam pursuant to that covenant is alleged by Nordin to have curtailed the production of the oak flooring plant. It is for that curtailment of production that damages are claimed.

This is the second appearance of this case before this court. The former appeal was from an order and judgment sustaining defendant May's motion for summary judgment. Upon remand for trial on the merits, see Nordin v. May, 8 Cir., 188 F.2d 411, a supplemental complaint and answer thereto were filed and the parties entered into a stipulation of the facts. Both parties then filed motions for summary judgment. Plaintiff's motion was denied, defendant's was sustained. Judgment was entered accordingly and plaintiff again appeals. The facts are as follows.

Leon S. and Nell Horne formerly owned the sawmill, a planing mill, the steam generating plant, the oak flooring plant, and two wholly constructed and one partially constructed dry kiln. All were located adjacent to each other and all were operated in conjunction. The Hornes owned the land upon which each unit was located and operated the entire establishment as a partnership under the name of the Star City Lumber Company.

The Hornes executed separate mortgages on the sawmill, the steam plant, the planing mill, and the land upon which each stood. These mortgages came into the possession of W. R. Alsobrook and are referred to as the Alsobrook mortgages. These Alsobrook mortgages contained no covenant or reservation to the effect that steam from the steam plant was to be furnished to the dry kilns, which were not covered by the mortgage. After the Alsobrook mortgages were recorded, the Hornes executed three mortgages to Andrew Nordin, the plaintiff herein, conveying the oak flooring plant, the dry kilns, and all of the remainder of the land except that covered by the Alsobrook mortgages. The Nordin mortgages contained a covenant to the effect that the Hornes, their successors, heirs, and assigns, would furnish to the owner of the oak flooring plant and dry kilns, or the mortgagee in possession thereof, sufficient steam power to operate the oak flooring plant and dry kilns at the cost of production of the steam.[1] The covenant incorporated in the mortgage did not state from what source the steam was to be furnished and did not mention the steam generating plant covered by the Alsobrook mortgages.[2] Upon a very meager record on the former appeal, and in view of the fact that the case was before this court on a judgment sustaining defendant's motion for summary judgment, it was necessary to assume the possibility that this covenant could have been one which under the law of Arkansas ran with the land and was binding on the Hornes and their successors in title. The inadequacy of the record further necessitated the assumption of the possibility that the Nordin mortgages were prior in date and seniority to the Alsobrook mortgages, a fact which the stipulation entered into on remand demonstrates was not correct.

The Hornes became insolvent. October 13, 1949, Nordin filed foreclosure proceedings in the United States District Court under his mortgages. November 28, 1949, Alsobrook filed foreclosure proceedings in the state court under his mortgages, and a receiver was appointed who took charge of the property covered by those mortgages. Apparently neither property was operated thereafter until March, 1950. Sometime prior to March 10, 1950, W. D. May, who was negotiating for the lease of the Alsobrook properties, knowing that Nordin was in possession of the dry kilns and the oak flooring plant, and presumably knowing that there was a steam connection between the steam plant and the dry kilns, went to

---

1. The oak flooring plant was operated by electricity at the time of this controversy.

2. The covenant was as follows: "In the event of foreclosure of this mortgage * * * the parties of the first part hereby contract and agree and bind themselves, their successors, heirs and assigns, to furnish to the purchaser or owner of said hardwood flooring plant and dry kiln sufficient steam power to operate said hardwood flooring plant and dry kiln. The charge for furnishing said steam power shall be the actual cost to said parties of first part, their successors, heirs or assigns."

Nordin, informed him of his, May's, contemplated lease of the sawmill and steam plant and suggested an arrangement by which if May entered into the contemplated lease he would furnish Nordin with steam for both dry kilns if Nordin would give May the use of one kiln. Nordin desired to operate the oak flooring plant and the dry kilns pending acquisition of title thereto. Nordin now stipulates that he said nothing to May about the existence of any covenant or easement under which steam was to be furnished from the steam plant which May was about to lease and made an oral agreement with May that if May did lease the steam plant and sawmill he, Nordin, would give him the use of one dry kiln for the use of steam for both dry kilns.

March 10, 1950, May, relying upon that agreement with Nordin, executed a lease with the receiver of the Alsobrook properties for the sawmill and steam generating plant. March 14, 1950, Nordin obtained an order from the court authorizing him to operate the oak flooring plant and the dry kilns at a stipulated monthly rental to be deducted from the mortgage indebtedness. On the former appeal the record was silent as to whether May knew anything about the covenant in the Nordin mortgage. For the purposes of that appeal it was assumed that he did, because, although May denied it, Nordin alleged in his complaint that May knew about the covenant at all times. The verbal agreement was carried out with certain agreed modifications, and both properties were operated. The foreclosure sale under the Nordin mortgages was held on August 4, 1950. Nordin was the purchaser. A few days after August 4, 1950, Nordin advised May of his purchase of the oak flooring plant and the dry kilns at the foreclosure sale and then for the first time exhibited to May his mortgage containing the covenant of the Hornes to furnish steam to the dry kilns at cost. He then told May that May was obligated under that covenant to furnish

him steam at cost without the use of kiln space. It is stipulated that this is the first May knew of this covenant and that Nordin had not theretofore divulged its existence to May. May refused to recognize the covenant as binding on him and refused to furnish the steam at cost but did not shut it off. On August 23, 1950, Nordin's employees refused to allow May to put lumber in the dry kiln May had been using. Whereupon, May's plant manager cut off the steam from the steam generating plant to the dry kilns. Nordin's plant manager then cut off the main which supplied water to May's steam plant. An agreement was then worked out between May and Nordin's attorney under which the water and steam were turned on. On August 25, 1950, Nordin filed this action, praying for a temporary injunction and damages as heretofore related. The foreclosure sale under the Alsobrook mortgages was held October 18, 1950. Nordin was the purchaser.[3] The commissioner's deed to Nordin was made December 4, 1950. The period of time during which Nordin claims May should have furnished him steam and did not was intermittently between August 23, 1950, and October 28, 1950, before Nordin became the owner of the steam plant on December 4, 1950.

The stipulation of facts has removed the penumbra of uncertainty concerning a number of important issues undeterminable by the record on the former appeal. It now appears, inter alia, from the stipulation that the mortgage under which May was holding his lease conveyed the title to the steam plant clear of any covenant to furnish steam to anyone. Plaintiff asserts that this court held on the former appeal that the covenant in his mortgages ran with the land and that by virtue thereof he "possessed rights in the nature of an easement or servitude on the steam plant." But that holding was qualified and conditioned upon the existence of certain facts, assumed as possibly existing but not determined to be correct. The opinion states: "We are not decid-

3. The grantee was a company owned by Nordin.

ing, and cannot decide, any controverted issues of fact." [188 F.2d 416.] It was assumed that Nordin's mortgages were superior to the Alsobrook mortgages. There can be no doubt about that, as the opinion states: "We have assumed that the covenant [the Nordin covenant] was not, because of time or circumstance, inferior to the mortgage upon which May's rights are based. If we are mistaken about that, the facts in that regard will be developed upon the trial of the case for whatever significance they may have." Upon remand plaintiff stipulated that one of the material facts upon which that conclusion was based was not correct—that the Alsobrook mortgages were senior liens in point of time and recordation.

It was assumed on the former appeal that May knew about the covenant at all times. It was assumed that an investigation such as a reasonably intelligent and prudent person would have made under the circumstances would have disclosed that the Hornes had agreed to furnish Nordin with steam from *this* steam generating plant. On the former appeal we said:

"The issue of May's knowledge of the covenant in suit was, we think, a vital issue in the case."

Vital to what? Vital to the question of whether May would be charged with knowledge of the application of the covenant to *this* steam plant, with the result that the covenant would create an easement upon the land upon which the steam plant was located.

█ The trial court reached the conclusion that since the Alsobrook mortgages were senior to the Nordin mortgages, the property included in the former was not encumbered by the covenant expressed in the latter. The trial court said:

"May admittedly operated the sawmill and steam plant as lessee of a Receiver appointed on the application of Alsobrook in a State court proceeding filed by Alsobrook to foreclose mortgages (then held by him) which were recorded in the mortgage records of Lincoln County prior to the execution of the Nordin mortgages containing the steam-furnishing covenants involved herein. Alsobrook, as the holder of said prior mortgages, could have operated the sawmill and steam plant without any obligation to furnish steam to Nordin; and this same immunity inured to the benefit of May as lessee of Alsobrook's Receiver."

Otherwise stated, the trial court placed May in the shoes of the mortgagee instead of in the shoes of the mortgagors, the Hornes, as the plaintiff contends should have been done. That question involves the application of the law of Arkansas, which, at best, is at least uncertain on this subject. Under such circumstances we defer to the judgment of the trial court concerning the law of his state. But the determination of the Arkansas law in this respect is not vital to the determination of this case. The vital question is whether the covenant incorporated in the Nordin mortgages ran with the land covered by the Nordin mortgage and constituted an easement on the land included in the Alsobrook mortgage, with the result that May, in possession of the Alsobrook land, was obligated to carry out that covenant. If the covenant created an easement in the Alsobrook land, it was because anyone who took that land or was in possession of it was charged with either actual or constructive notice of the covenant and of the fact that the Alsobrook land was subject to its terms and conditions.

Upon the former appeal we held that the conclusion of the trial court that the recording of the Nordin mortgage containing the covenant was not constructive notice to May of the existence of the covenant would not be disturbed. And it is now of significance, on the question of what knowledge May shall be charged with, that an examination of the recorded Nordin mortgages *would not have* indicated that the steam plant on the Alsobrook land was burdened with an easement to furnish steam to Nordin.

It is now stipulated that May had no actual knowledge of the existence of the covenant at the time when he took possession of the Alsobrook property. Were the facts as now disclosed such that it must be held as a matter of law that reasonable inquiry by May would have disclosed the fact that the steam plant he was about to lease was encumbered with an easement to furnish steam to the dry kilns? True it is that there was a visible connection between the steam generating plant on the Alsobrook property and the dry kilns on the adjacent Nordin property. We held on the former appeal that that fact should have put May on inquiry as to what arrangement Nordin had for obtaining steam for the dry kilns. In view of the allegation in Nordin's complaint that May knew of the covenant, we assumed on the former appeal that inquiry by May would have disclosed its existence and to what property that covenant applied, and that he would therefore be bound by it. But the stipulation presents an entirely different factual situation. May not only did not know of the covenant, but inquiry of Nordin did not disclose its existence. Such an inquiry was inherent in the nature of the discussion between May and Nordin prior to May's lease which culminated in the agreement heretofore related. That discussion resulted in no disclosure of the covenant. Inherent in the result which the trial court reached is the conclusion that a reasonable inquiry by May would not have disclosed the existence of the covenant. We cannot say upon this record that the trial court did not properly reach the conclusion that a reasonable inquiry would not have disclosed the existence of the covenant. On the contrary, the inference is strong, from the stipulated facts, that there was a studious effort on the part of Nordin to conceal the existence of the covenant until after the date of the foreclosure of Nordin's mortgage.

The facts in this case are not of such a nature as to justify charging May with knowledge that the Alsobrook property was encumbered by the easement contended for. Absent knowledge or notice of the covenant, May was not bound by it. The necessary result is that the Alsobrook land in the hands of May was not burdened with the easement. The judgment of the trial court is correct and is affirmed.